■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES L. HURD, Appellant. [719 NYS2d 752] —Carpinello, J. Appeal from a judgment of County Court of Washington County (Hemmett, J.), rendered May 22, 2000, convicting defendant upon his plea of guilty of the crimes of rape in the second degree and rape in the third degree.

In November 1999, an 11-count indictment was handed up against defendant charging him with numerous sex-related offenses stemming from his inappropriate contact with two nieces, ages 13 and 15, respectively. Following an unsuccessful motion to suppress oral and written statements to State Police Investigator Thomas Aiken, defendant pleaded guilty to one count of rape in the second degree and one count of rape in the third degree in satisfaction of the entire indictment. Sentenced to consecutive prison terms of $2\frac{1}{3}$ to 7 years and 1 to 3 years, respectively, he now appeals.

Upon our review of the *Huntley* hearing, we find that County Court properly denied defendant's motion to suppress, there being sufficient evidence to support the court's conclusion that defendant never unequivocally invoked his right to counsel

during the period that he was being questioned. According to Aiken, when he initially met defendant in a parking lot near the State Police barracks to discuss his nieces' accusations, defendant indicated to him that he did not know if he needed to contact an attorney.[1] In response to this general inquiry, Aiken informed defendant that he had a right to have an attorney and that he could invoke that right at anytime. He further advised defendant that if he did invoke that right, the two would not be able to discuss the matter. According to Aiken, defendant agreed to accompany him to the barracks and to talk to him. He did not make any request at this time to speak to an attorney. To be sure, an inquiry about whether or not one should contact an attorney does not, without more, constitute an unequivocal invocation of the right to counsel (*see, People v Hicks*, 69 NY2d 969, 970; *People v Thompson*, 271 AD2d 555, *lv denied* 95 NY2d 858; *People v Diaz*, 161 AD2d 789, *lv denied* 76 NY2d 855).

Aiken further testified that, upon voluntarily accompanying him to the barracks, defendant was advised of his *Miranda* rights, waived these rights in writing at 1:44 P.M. and agreed to speak to him about the accusations. Although initially denying the allegations, approximately 30 to 45 minutes into the interview defendant admitted to having sexual intercourse with both girls. According to Aiken, during the entire two-hour period that defendant was giving his statement (he signed a written copy of it at 3:38 P.M.), he never did or said anything to indicate that he wished to exercise his right to counsel. Notably, when defendant's three-page written statement was completed, Aiken read it in its entirety to defendant twice; the second of these two readings was tape-recorded. This tape was admitted into evidence at the hearing after Aiken testified that it fairly and accurately depicted the final reading of defendant's written statement and that nothing had been redacted from it (*see, People v Barbour*, 119 AD2d 584, *lv denied* 67 NY2d 1050; *see also, People v McGee*, 49 NY2d 48, *cert denied sub nom. Waters v New York*, 446 US 942). Upon our review of that tape, it does not contain any statement by defendant that he had invoked his right to counsel or that he wished to invoke this right. When questioned about the tape on cross-examination at the *Huntley* hearing, defendant claimed that a portion of it, wherein he stated that he chose to have an attorney present

---

1. Significantly, defendant, who testified at the *Huntley* hearing, denied that there had been any discussion of an attorney at this particular time.

but could not get ahold of him, had been deleted.[2] However, defense counsel never objected to the introduction of the tape into evidence on *any* ground, particularly the ground that the tape had been tampered with or that portions had been deleted (*see generally, People v Weir*, 177 AD2d 811, 812, *lv denied* 80 NY2d 911).

In sharp contrast to Aiken's testimony, defendant testified that he informed Aiken at the commencement of questioning at the State Police barracks that he wanted to speak to an attorney, that he made "repeated" attempts to contact a specific attorney in Aiken's presence and that he told Aiken who he was attempting to call. Although the record reveals that defendant placed one, one-minute cellular telephone call to this attorney's office at approximately 1:42 P.M. (just a few minutes before he signed the statement waiving his *Miranda* rights),[3] Aiken denied knowing that defendant placed this or any other call to any attorney at any time. According to Aiken, the only cellular telephone conversations that defendant had in his presence were to his wife and father.

Indeed, approximately 40 minutes after he placed the call to this attorney's office, defendant had a 16-minute cellular telephone conversation with his wife which was immediately followed by a nine-minute cellular telephone conversation with his father. Aiken testified that he overheard each of these conversations and did not hear defendant indicate at any time during either that he wanted an attorney. According to the testimony of defendant's wife, defendant indicated to her during their conversation that he "would" contact the aforementioned attorney when their conversation terminated; the record supports County Court's conclusion, however, that he never did so. She further testified that at no point during their conversation did she hear defendant make a request to Aiken for an attorney or to terminate their interview. Defendant's father similarly testified that he did not hear defendant make a request to Aiken during their conversation to speak to an attorney.

In the face of this conflicting testimony, County Court specifi-

---

**2.** Although defendant conceded on cross-examination that he signed the written statement, he claimed that the entire statement was false, that he never engaged in any of the conduct that he confessed to and that he never read the statement before signing it.

**3.** Defendant testified that he spoke to this attorney's secretary in Aiken's presence and was informed that he was out of the office. Other than defendant's claim that he had this conversation with the secretary, no other corroborating evidence was introduced to support it.

cally determined that defendant placed no further calls to any attorney after speaking with his wife and father and that defendant never specifically and unequivocally advised Aiken that he wished to remain silent or have an attorney present at any time. Implicit in this ruling is the court's rejection of defendant's version of events that afternoon (*see, People v Williams*, 118 AD2d 672, *lv denied* 67 NY2d 952; *People v Green*, 101 AD2d 954). Noting that issues of credibility are primarily for the suppression court and are accorded great deference (*see, e.g., People v Prochilo*, 41 NY2d 759, 761; *People v Dickson*, 260 AD2d 931, 932, *lv denied* 93 NY2d 1017), we are satisfied that the record supports these findings and accordingly affirm (*see, People v Brown*, 160 AD2d 1037, *lv denied* 76 NY2d 785; *see generally, People v Glover*, 87 NY2d 838; *People v Dehmler*, 188 AD2d 1056, *lv denied* 81 NY2d 1013).

Defendant's remaining contention has been reviewed and rejected.

Cardona, P. J., Mercure, Spain and Rose, JJ., concur. Ordered that the judgment is affirmed, and matter remitted to the County Court of Washington County for further proceedings pursuant to CPL 460.50 (5).