■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES BEVERLY, Also Known as ALBERT PRIEST, Appellant. [772 NYS2d 763]—

Kane, J. Appeals (1) from a judgment of the County Court of Schenectady County (Tomlinson, J.), rendered April 25, 2001, upon a verdict convicting defendant of the crimes of criminal sale of a controlled substance in the third degree, criminal possession of a controlled substance in the third degree, and criminal possession of a controlled substance in the seventh degree and (2) by permission, from an order of said court (Eidens, J.), entered October 8, 2002, which denied defendant's motion pur-

suant to CPL 440.10 to vacate the judgment of conviction, without a hearing.

State Police and the City of Schenectady Police Department were collaborating on an undercover buy-and-bust drug operation. As Investigator Richard Butterfield, an undercover officer, drove through Schenectady, he encountered defendant. After defendant approached the car, Butterfield indicated that he wanted to purchase crack cocaine. Defendant stated that he had run out, but could take Butterfield to a place where they could get some. Two back-up officers observed a tall black male in dark clothing approach and enter Butterfield's vehicle, then followed that vehicle while listening to transmissions from Butterfield's one-way radio transmitter. The transmission was admittedly poor.

Defendant directed Butterfield to a specific address, where defendant exited the vehicle. When Butterfield was prevented from accompanying defendant into the building, he demanded assurances that defendant would not abscond with the $37 in buy money. Defendant provided a Department of Motor Vehicles identification card as collateral, then proceeded into the building. The picture on the card appeared to match defendant. Butterfield transmitted the information on that card to the back-up officers, including defendant's name, birth date and address, although the name was unclear and was transcribed as James Bolin. Defendant returned to the car and handed Butterfield loose chunks of a substance believed to be crack cocaine. Butterfield wrapped the substance in an unused napkin and placed it in his pocket. After defendant left the vehicle, Butterfield proceeded to a designated meeting spot where a field test was conducted, revealing that the substance was cocaine. A short time later, back-up officers observed defendant and had uniformed officers detain him. A uniformed officer identified defendant as Albert Priest, then took defendant to a prearranged spot for a show-up identification. Butterfield approached in a different vehicle and observed defendant through the half-open window, at which point he identified defendant as the person who sold him drugs 15 minutes earlier.

The jury convicted defendant of criminal sale of a controlled substance in the third degree, criminal possession of a controlled substance in the third degree and criminal possession of a controlled substance in the seventh degree. County Court sentenced defendant, as a second felony offender, to concurrent prison terms of 8 to 16 years on each of the felony charges and one year on the misdemeanor. The court subsequently denied his CPL 440.10 motion without a hearing.

We affirm. County Court properly admitted the cocaine into evidence, as the chain of custody was adequately established. The substance did not leave Butterfield's custody during field testing, after which it was placed in a State Police evidence bag which was properly sealed and labeled. That bag was turned over to a Schenectady investigator who placed the State Police evidence bag inside a Schenectady evidence bag, which was properly sealed and labeled. The evidence was then taken to Schenectady's locked evidence vault, from which it was later removed by Sergeant Ernest Richute, the only officer with a key to that vault, and transported by him to the State Police laboratory for confirmatory testing. According to Richute's testimony and his notation on the Schenectady evidence bag label, this transport occurred on September 1, 2000. The State Police laboratory's evidence receipt indicates that it was received on September 8, 2000. Richute explained this discrepancy by stating that he must have looked at the wrong week on the calendar when dating the label.

To establish authenticity of real evidence, the proffering party must show "that it is the identical evidence and has not been tampered with" (*People v Julian*, 41 NY2d 340, 343 [1977]; *see People v Battistini*, 306 AD2d 636, 637 [2003]). "[P]roof of a complete chain of custody may be excused where there are reasonable assurances of the identity and unchanged condition of the evidence" (*People v Haggray*, 173 AD2d 962, 964 [1991], *lv denied* 78 NY2d 966 [1991]; *see People v Howard*, 305 AD2d 869, 870 [2003], *lv denied* 100 NY2d 583 [2003]). Where, as here, the evidence bags remained unaltered and seals on the evidence bags remained intact, the court may be reasonably assured of the identity of the evidence and its unchanged condition (*see People v Julian, supra* at 344; *People v Pearson*, 224 AD2d 779 [1996], *lv denied* 88 NY2d 940 [1996]; *People v Haggray, supra* at 964). Any deficiencies in the chain of evidence go to the weight accorded the evidence, not its admissibility (*see People v Howard, supra* at 870; *People v Pacheco*, 274 AD2d 746, 747 [2000], *lv denied* 95 NY2d 937 [2000]).

Discrepancies in dates of delivery of the evidence, as well as discrepancies between different officers' testimony as to whether there was one chunk or several chunks of crack cocaine, create credibility issues for the jury to determine (*see People v Coleman*, 2 AD3d 1045, 1046-1047 [2003]). Defendant's argument that the drug evidence in this case was not proven authentic because it could have been confused with evidence from another drug bust that same day is unpersuasive, considering that each case's evidence was in a separate, sealed and

labeled evidence bag before being placed in the investigator's briefcase for transport to the police station. Accordingly, the drug evidence was properly admitted.

The verdict was not against the weight of the evidence. While a different verdict here would not have been unreasonable, the conflicting testimony raised credibility questions which were within the jury's province to resolve and such determinations are afforded great deference (*see People v Bleakley*, 69 NY2d 490, 495 [1987]; *People v Ward*, 282 AD2d 819, 820 [2001], *lv denied* 96 NY2d 942 [2001]). As noted above, there were questions regarding the chain of custody and whether the drug evidence was in its original state. If the jury believed that the sealed evidence bags provided assurance that the substance within was not altered, it had no choice but to believe the detailed and unrebutted proof that the substance was scientifically identified as cocaine. Butterfield's testimony established that an individual sold him that cocaine for $37. Although there was conflicting evidence regarding identification of defendant as the individual who sold those drugs, the jury could resolve this issue beyond a reasonable doubt considering Butterfield's eyewitness identification and his testimony regarding the identification card provided by the seller as collateral and such card being found on defendant at the time of his arrest approximately 15 minutes later. Viewing the evidence in a neutral light and giving appropriate deference to the jury's credibility determinations, the verdict was not against the weight of the evidence (*see People v Bleakley, supra* at 495; *People v Ward, supra* at 820).

County Court did not err in denying defendant's CPL 440.10 motion without a hearing. Defendant had the burden of challenging his conviction with supporting evidentiary facts, a burden not met by his unsupported conclusory allegations (*see People v Session*, 34 NY2d 254, 255-256 [1974]; *People v Baptiste*, 306 AD2d 562, 569 [2003]). No hearing is necessary if the motion papers fail to raise any supported argument based on information outside the trial record (*see People v Satterfield*, 66 NY2d 796, 799 [1985]). Some of defendant's allegations were based on information in the record, which was available for review on the direct appeal and thus not a proper subject of a CPL article 440 motion (*see* CPL 440.10 [2] [b]). His contentions that he would have requested additional hearings or discovery are unsupported by factual information, including the specifics of such alleged requests and how they would have assisted his defense. Without factual support, defendant's bare assertions were insufficient to entitle him to a hearing on his CPL article 440 motion.

Defendant's argument regarding improper bolstering of Butterfield's show-up identification is not preserved for our review, as no objections were made during trial (*see* CPL 470.05 [2]; *People v Kelly*, 185 AD2d 494, 495 [1992]). Were we to consider the issue, given the strength of Butterfield's testimony any error in this regard was harmless (*see People v Johnson*, 57 NY2d 969, 970 [1982]).

Given defendant's extensive criminal history dating back 20 years, and that his sentence falls in the middle of the permissible statutory range, his contention regarding the harshness of his sentence is unpersuasive (*see People v Torra*, 309 AD2d 1074, 1076 [2003]). Any alleged improper remarks by the prosecutor during summation were not preserved for review, and we decline to address them.

Peters, J.P., Spain, Mugglin and Rose, JJ., concur. Ordered that the judgment and order are affirmed.