█ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIE DANFORD, Appellant. [931 NYS2d 137]—

Stein, J.

Defendant was arrested after selling approximately two ounces of cocaine to a confidential police informant (hereinafter CI) in the City of Cortland, Cortland County. He was indicted and found guilty after a jury trial of one count of criminal sale of a controlled substance in the second degree. County Court sentenced him, as a second violent felony offender, to a prison term of 14 years followed by five years of postrelease supervision and directed him to pay restitution of $2,400 to the

Cortland County Drug Task Force for the buy money used in the undercover operation. Defendant now appeals and we modify.

Preliminarily, we note that defendant's challenge to the legal sufficiency of the evidence presented at trial is not preserved because he failed to move for a trial order of dismissal with sufficient particularity (*see People v Hawkins*, 11 NY3d 484, 492 [2008]; *People v Gray*, 86 NY2d 10, 19 [1995]; *People v Malcolm*, 74 AD3d 1483, 1484 n [2010], *lv denied* 15 NY3d 954 [2010]). Nevertheless, as defendant also argues that the verdict is against the weight of the evidence (*see* CPL 470.15 [5]), we will necessarily evaluate whether the elements of the crimes charged were sufficiently proven at trial (*see generally People v Danielson*, 9 NY3d 342, 348-349 [2007]; *People v Garcia*, 79 AD3d 1248, 1250 [2010], *lv denied* 16 NY3d 797 [2011]; *People v Jones*, 79 AD3d 1244, 1246 [2010], *lv denied* 16 NY3d 832 [2011]).

Upon our review, we find that defendant's conviction was not against the weight of the evidence. The CI and Troy Boice, one of the lead investigators on this case, both testified that the operation began on November 5, 2009 when Boice had the CI call defendant and ask for "a couple . . . snow tires," which is allegedly code for two ounces of cocaine. Further testimony established that, before proceeding to the arranged buy location, Boice, Sean Kilpatrick and Todd Caufield—two other members of the drug task force—searched the CI and his vehicle and found no drugs. Thereafter, Boice gave the CI $2,400 of marked bills to purchase the drugs. A recording device was placed on the CI and the CI, followed immediately thereafter by members of the drug task force, drove in separate vehicles to the prearranged buy location. Boice and Kilpatrick, who were in the unmarked police vehicle directly behind the CI, testified that they remained in visual contact with the CI's truck during the entirety of the drive to the buy location.

After the CI and the drug task force members arrived at the arranged buy location and got into position, defendant arrived and parked his vehicle. Defendant then got out of his vehicle and went into a store at the nearby shopping center, after which he returned and got into the CI's vehicle. The ensuing conversation between the CI and defendant—which referred to the transfer of the money from the CI to defendant—was monitored by the drug task force members through the recording device worn by the CI. Although no explicit reference to the drugs was made during the conversation, the CI testified that defendant gave him two plastic bags containing a white powder, in return for which he gave defendant the marked $2,400. Defendant was

arrested upon exiting the vehicle. The CI drove away, but was stopped by Joseph Slater, another officer working with the drug task force.

At the time of his arrest, defendant was searched and found to have the entire marked $2,400 in his possession. In addition, Boice and Slater testified that two plastic bags containing a white, powdery substance were found on the front seat of the CI's truck and which were later weighed and field-tested by Caufield, who determined the substance to be approximately 50 grams of cocaine. The field test results were subsequently confirmed by Julie Romano, the forensic scientist who tested the substance at the state crime lab.

Defendant also testified and proffered his version of the events that took place on November 5, 2009. According to defendant, he believed that the CI had called him to arrange for him to deliver actual snow tires, as he had provided the CI with automobile parts in the past. Defendant further testified that, although he did not have enough time to pick up any snow tires, he went to meet with the CI anyway so that the CI could give him $2,400 as part of a prearranged loan. Defendant denied that he passed or sold any drugs to the CI. While defendant's testimony contradicted that offered by the People, it "presented 'a classic credibility issue' for the jury to resolve" (*People v Mitchell*, 57 AD3d 1308, 1309 [2008], quoting *People v Allen*, 13 AD3d 892, 894 [2004], *lv denied* 4 NY3d 883 [2005]; *accord People v Moyer*, 75 AD3d 1004, 1006 [2010]). The jury apparently chose to credit the People's version of events. Even if a different finding would not have been unreasonable, viewing the evidence in a neutral light and deferring to the jury's superior position to determine witness credibility, we do not find that the jury failed to accord the evidence its proper weight (*see People v Romero*, 7 NY3d 633, 643-644 [2006]; *People v Rolle*, 72 AD3d 1393, 1396 [2010], *lv denied* 16 NY3d 745 [2011]; *People v Sidbury*, 24 AD3d 880, 880-881 [2005], *lv denied* 6 NY3d 818 [2006]; *People v Beverly*, 5 AD3d 862, 865 [2004], *lv denied* 2 NY3d 796 [2004]).

We turn next to defendant's contention that County Court improperly admitted the plastic bags of cocaine recovered by the police and the testimony relating to the contents and weight of those bags because the People failed to establish a complete chain of custody over them. The party seeking admission of evidence must establish the authenticity of that evidence, which mandates showing that "the evidence is identical to that involved in the crime [and] has not been tampered with" (*People v Julian*, 41 NY2d 340, 342-343 [1977]; *see People v Beverly*, 5

AD3d at 864; *People v Battistini*, 306 AD2d 636, 637 [2003], *lv denied* 1 NY3d 568 [2003]). One method of authenticating a fungible item, such as a plastic bag of white powder, is to establish the chain of custody of that item (*see People v Julian*, 41 NY2d at 343; *People v Battistini*, 306 AD2d at 637).

Here, Boice testified that, when he first approached the CI's vehicle after the controlled buy on November 5, 2009, he saw two plastic bags of white powder sitting on the front passenger seat. Although Boice did not immediately take those bags into his physical possession as he went to obtain an evidence bag from another vehicle, Slater testified that he observed the CI's vehicle the entire time and did not see anyone other than Boice enter that vehicle. Boice thereafter returned to the vehicle and secured the two plastic bags in a brown evidence bag and transported them back to the police station. Boice also testified that he placed the bags on Caufield's desk while he was interviewing defendant in the adjacent interview room at the police station, but that he was able to observe the bags from the interview room. The plastic bags were subsequently transferred into Caufield's possession and, after he weighed and tested the substance contained therein, he placed the evidence into the evidence locker. This process was recorded on exhibit No. 18, the chain of custody document turned over to defendant prior to trial.

The People also presented the testimony of Edward Lake, the evidence custodian of the Cortland County Sheriff's Office in November 2009, that he took the plastic bags from the evidence locker to the crime lab for testing. Romano testified that the bags were received into custody by the crime lab. After they were tested, they were returned to the evidence locker by Caufield. These events were recorded on exhibit No. 28—the chain of custody record maintained by the evidence custodian—which exhibit was turned over to defense counsel prior to his examination of Caufield, Romano and Lake.

Viewed in its entirety, the foregoing provides the necessary reasonable assurances of the identity and unchanged condition of the drugs to authenticate that evidence (*see People v Gilmore*, 72 AD3d 1191, 1192-1193 [2010]; *People v Bellamy*, 34 AD3d 937, 938-939 [2006], *lv denied* 8 NY3d 843 [2007]). Thus, the admission of the cocaine into evidence was proper and any purported gaps in the chain of custody raised by defendant went to the persuasiveness of that evidence, not its admissibility (*see People v Hawkins*, 11 NY3d at 494; *People v Gilmore*, 72 AD3d at 1193).

We are also unconvinced by defendant's contention that the

People's failure to turn over exhibit No. 28 prior to trial deprived him of a fair trial. Defense counsel said very little about the chain of custody during his opening statement, and his closing argument was consistent with his opening statement. Although exhibit No. 28 added to the weight of the evidence against defendant, it did not significantly affect defendant's trial strategy of denying that he passed any drugs to the CI and pointing to various gaps in the chain of custody in an attempt to weaken the People's case against him. Further, inasmuch as defendant had the opportunity to examine all of the individuals who handled the plastic bags after November 5, 2009 and their testimony was consistent with the information provided on exhibit No. 28, its disclosure during the trial did not prejudice defendant (*see People v Carter*, 31 AD3d 1056, 1057-1058 [2006], *lv denied* 7 NY3d 901 [2006]; *People v Caban*, 118 AD2d 957, 959 [1986]; *compare People v Pizzali*, 159 AD2d 652, 654 [1990]).

We agree with defendant's contention that County Court erred in admitting into evidence a signed statement of Caufield that purported to recount defendant's oral confession (exhibit No. 13), as it was not read, signed or otherwise acknowledged by defendant (*see People v Coleman*, 199 AD2d 330, 331 [1993], *lv denied* 83 NY2d 850 [1994]; *People v Lee*, 159 AD2d 238 [1990], *lv denied* 76 NY2d 791 [1990]). Nonetheless, such error was harmless in view of the overwhelming evidence of defendant's guilt (*see People v Coleman*, 199 AD2d at 331; *People v Lee*, 159 AD2d at 238).

County Court's restitution order must be vacated. A law enforcement agency may recover "the amount of funds expended in the actual purchase of [cocaine] by such law enforcement agency, less the amount of any funds which have been or will be recovered from any other source" (Penal Law § 60.27 [9]; *see* Penal Law § 220.00 [5]; Public Health Law § 3306 [Schedule II] [b] [4]). Here, the entire $2,400 used in the controlled buy was recovered from defendant's person following his arrest. Thus, it was error to direct defendant to pay restitution therefor (*see People v Heaney*, 75 AD3d 836, 837 [2010], *lv denied* 15 NY3d 852 [2010]).

On the other hand, in view of his extensive criminal history, including three prior drug possession convictions, defendant's sentence was not harsh and excessive. Moreover, "[t]he fact that the sentence imposed after trial was greater than the sentence offered as part of a pretrial plea agreement offer, which defendant rejected, is not proof that defendant was penalized for exercising his right to a jury trial" (*People v Robinson*, 72

AD3d 1277, 1278 [2010], *lv denied* 15 NY3d 809 [2010]; *see People v Vargas*, 72 AD3d 1114, 1120 [2010], *lv denied* 15 NY3d 758 [2010]). Nor do we find the existence of any extraordinary circumstances or abuse of discretion warranting a modification of the sentence in the interest of justice.

Defendant's remaining contentions have been considered and found to be without merit.

Peters, J.P., Spain, Lahtinen and Egan Jr., JJ., concur. Ordered that the judgment is modified, on the law, by vacating so much thereof as directed defendant to pay restitution, and, as so modified, affirmed.