People v Guy (2024 NY Slip Op 06625)

People v Guy

2024 NY Slip Op 06625

Decided on December 26, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 26, 2024

112354
[*1]The People of the State of New York, Respondent,
v
Victor D. Guy, Appellant.

Calendar Date:November 19, 2024

Before:Aarons, J.P., Reynolds Fitzgerald, Ceresia, McShan and Mackey, JJ.

Rural Law Center of New York, Inc., Plattsburgh (Kristin A. Bluvas of counsel), for appellant.
John M. Muehl, District Attorney, Cooperstown (Christopher James Di Donna of counsel), for respondent.

Mackey, J.
Appeal from a judgment of the County Court of Otsego County (Brian D. Burns, J.), rendered May 24, 2019, upon a verdict convicting defendant of the crimes of criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third degree (two counts).
Defendant was the target of a narcotics investigation by the Oneonta Police Department (hereinafter OPD). During the investigation, a detective with the OPD acting in an undercover capacity contacted defendant via text message and made arrangements to purchase crack cocaine from him. Following his arrest, defendant was transported to the police station and subjected to a search, during which officers recovered heroin and cocaine that defendant had hidden on his person. Defendant was subsequently charged with criminal sale of a controlled substance in the third degree and two counts of criminal possession of a controlled substance in the third degree. After defendant unsuccessfully moved to suppress the drugs recovered during the search of his person, the matter proceeded to a jury trial and defendant was convicted as charged. He was thereafter sentenced, as a second felony offender, to a prison term of 12 years, to be followed by three years of postrelease supervision, for his conviction of criminal sale of a controlled substance in the third degree. Defendant was also sentenced to lesser concurrent prison terms for the remaining two convictions. Defendant appeals. We affirm.
Defendant's contention that the verdict is not supported by legally sufficient evidence is unpreserved for our review (see People v Baber, 182 AD3d 794, 795 [3d Dept 2020], lv denied 35 NY3d 1064 [2020]; People v Harris, 177 AD3d 1199, 1200 [3d Dept 2019], lv denied 35 NY3d 1064 [2020]). Defendant nevertheless contends that the verdict is against the weight of the evidence. Where, as here, "a contrary result would not have been unreasonable, we weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (People v Novak, 148 AD3d 1352, 1354 [3d Dept 2017] [internal quotation marks and citations omitted], lv denied 29 NY3d 1084 [2017]; see People v Arhin, 165 AD3d 1487, 1488 [3d Dept 2018]). As relevant here, "[a] person is guilty of criminal sale of a controlled substance in the third degree when he [or she] knowingly and unlawfully sells . . . a narcotic drug" (Penal Law § 220.39 [1]) and "[a] person is guilty of criminal possession of a controlled substance in the third degree when he [or she] knowingly and unlawfully possesses . . . a narcotic drug with intent to sell it" (Penal Law § 220.16 [1]).
The record discloses that an undercover detective with the OPD arranged to meet defendant to purchase crack cocaine from him for $250. At trial, the detective testified that when defendant arrived at the agreed-upon location, defendant immediately recognized him as being a police officer and tossed [*2]away a plastic bag he was holding. The detective testified that this plastic bag contained several individual baggies of a chunky white substance, which field tested positive as crack cocaine. He also observed defendant's cellphone in the front seat of the car, which displayed the most recent call as being the phone number the detective had been using for the investigation. A second detective with the OPD testified that after defendant was arrested and transported to the police station, he performed a strip search of defendant and retrieved a bag of drugs from between his buttocks. An additional bag of drugs was also discovered inside one of defendant's socks. The second detective testified that the substances found inside these bags field tested positive for crack cocaine and heroin. He testified that, in total, 19 baggies of heroin and 11 baggies of cocaine were recovered. The second detective further testified that, from his experience, the amount of drugs defendant possessed was "not [for] personal usage. That is amounts that a drug dealer would use to sell for a couple of reasons. The quantity of those drugs is an estimated $2,000 retail value. Drug user [sic] do not possess that quantity of drugs on them. Another reason is that because it's individually packaged it is packaged and ready for resale. The third reason would be that drug users do not possess multiple categories of drugs." Viewing this evidence in a neutral light, we are satisfied that defendant's convictions for criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third degree are supported by the weight of the evidence (see Penal Law §§ 220.39 [1]; 220.16 [1]; People v Kendricks, 226 AD3d 1150, 1153 [3d Dept 2024], lv denied 41 NY3d 1003 [2024]).[FN1]
We also find no merit to defendant's claim that the People failed to establish a sufficient chain of custody for the crack cocaine obtained from the controlled buy and, therefore, the narcotics were erroneously admitted into evidence. "The failure to establish a complete chain of custody may be excused where there are reasonable assurances of the identity and unchanged condition of the evidence" (People v Howard, 305 AD2d 869, 870 [3d Dept 2003] [internal quotation marks and citation omitted], lv denied 100 NY2d 583 [2003]). Here, the detective testified that he transported the white chunky substance recovered at the scene of the controlled buy to the police station, where it was field tested, and then placed the substance in a sealed and dated evidence bag that was stored in the evidence locker. The detective further described his transportation of the evidence from the evidence locker to the State Police crime laboratory. In addition, the People presented the testimony of the State Police forensic scientist who received, tested and secured the crack cocaine from the controlled buy, and he explained that the evidence admitted at trial was in the same condition as when he [*3]examined it. "Such testimony, taken as a whole, provides the requisite 'reasonable assurances of the identity and unchanged condition of the drugs to authenticate that evidence' " (People v Arce-Santiago, 154 AD3d 1172, 1173 [3d Dept 2017] [citations omitted], lv denied 30 NY3d 1113 [2018], quoting People v Danford, 88 AD3d 1064, 1067 [3d Dept 2011], lv denied 18 NY3d 882 [2012]). Regardless, any gaps in the chain of custody go to the weight to be accorded to the challenged evidence and not its admissibility (see People v Baez, 42 NY3d 124, 128-129 [2024]; People v Hawkins, 11 NY3d 484, 494 [2008] [internal citation omitted]; People v Torres, 146 AD3d 1086, 1088 [3d Dept 2017], lv denied 29 NY3d 1087 [2017]) and any potential discrepancy goes to the jury's resolution of the weight of the evidence (see People v Torres, 146 AD3d at 1088; compare People v Baez, 42 NY3d at 129-133; People v Garcia-Toro, 155 AD3d 1086, 1088 [3d Dept 2017], lv denied 30 NY3d 1115 [2018]).
Nor are we persuaded that defendant proved the affirmative defense of entrapment by a preponderance of the evidence (see Penal Law §§ 25.00 [2]; 40.05). Specifically, he was required to prove that "(1) he was actively induced or encouraged to commit the offense by a public official; and (2) such inducement or encouragement created a substantial risk that the offense would be committed by defendant who was not otherwise disposed to commit it" (People v Vickers, 168 AD3d 1268, 1273 [3d Dept 2019] [internal quotation marks and citations omitted], lv denied 33 NY3d 1036 [2019]). "Whether a defendant is predisposed to commit an offense or was induced to commit the offense is a question of fact" (id. [internal quotations marks and citations omitted]). At trial, defendant, who testified, admitted to the sale of drugs, but asserted the defense of entrapment. He claimed, in essence, that he was no longer interested in selling drugs, and that he made the sale to the undercover detective only after the detective barraged him with numerous text messages. Defendant mused that initially he "blew off" the request, but he needed the money. In arguing that he was entrapped, defendant also points to the fact that he did not immediately respond to the text message about providing the drugs to "Scott" (the undercover detective's alias) and that it took him almost two weeks to do so, indicating he was not regularly selling drugs. He further points to the fact that it took him more than 10 hours to travel to the City of Oneonta, Otsego County from his home in the City of Yonkers, Westchester County by bus and argues that he never would have done so but for the persistent contact by law enforcement. However, "merely asking a defendant to commit a crime is not such inducement or encouragement as to constitute entrapment" (People v Delaney, 309 AD2d 968, 970 [3d Dept 2003] [internal quotation marks, brackets and citation omitted]; see People v Reeder, 204 AD3d 1527, 1528 [4th Dept 2022], lv denied 39 NY3d 1074[*4][2023]). Moreover, defendant's admitted history as a drug dealer was evidence of his predisposition to commit the crime charged (see People v Calvano, 30 NY2d 199, 204-205 [1972]), notwithstanding his claims at trial that he had renounced his old ways. Accordingly, we do not find the jury's rejection of the entrapment defense to be against the weight of the evidence.
Next, we find no impropriety in the strip search conducted at the police station following defendant's arrest. "A strip search must be founded on a reasonable suspicion that the suspect is concealing evidence underneath clothing and the search must be conducted in a reasonable manner. A similar standard applies to visual body cavity searches, requiring a specific and articulable factual basis supporting a reasonable suspicion that the suspect has evidence concealed inside a body cavity and the search is conducted in a reasonable manner" (People v Hunter, 73 AD3d 1279, 1280 [3d Dept 2010] [internal quotation marks, brackets and citation omitted]). " 'Visual cavity inspections cannot be routinely undertaken as incident to all drug arrests or permitted under a police department's blanket policy that subjects persons suspected of certain crimes to these procedures' " (People v Colon, 80 AD3d 440, 440 [1st Dept 2011] [brackets and ellipsis omitted], quoting People v Hall, 10 NY3d 303, 311 [2008]).
At the suppression hearing, the detective testified that after defendant was handcuffed, he retrieved a small bag with a white chunky substance from where defendant had tossed it on the ground. The detective testified that, prior to being transported to the police station, defendant told him that he also had drugs "secreted in his butt[ocks]." According to the detective, the drugs were "just between [defendant's buttocks'] cheeks" and defendant "easily reached around and grabbed [the drugs] and handed [the drugs] off to the searching officer." He confirmed that the drugs were not inside defendant's anal cavity. During cross-examination, the detective reiterated that defendant affirmatively told him that there were drugs "secreted" in his underwear. County Court then sought clarification on the officer's inquiry as to whether defendant had any more drugs on his person and the detective opined that drug dealers commonly keep drugs hidden in their buttocks. County Court's credibility determinations are entitled to great weight in view of its superior position to observe the testimony (see People v Prochilo, 41 NY2d 759, 761 [1977]; People v Hurd, 279 AD2d 892, 895 [3d Dept 2001]), and we find no error in its finding that the strip search was "founded on a reasonable suspicion that [defendant was] concealing evidence underneath clothing" as defendant specifically previously indicated he had more drugs in his underwear when he was detained (People v Hall, 10 NY3d at 310-311; People v Chase, 226 AD3d 1078, 1079 [3d Dept 2024]). We further find that the search was "conducted in a reasonable manner" in [*5]a private room, with only male officers present, and the undisputed testimony is that defendant himself removed the bag of drugs from in between his buttocks (People v Hall, 10 NY3d at 311; compare People v Holton, 160 AD3d 1288, 1289 [3d Dept 2018], lv denied 32 NY3d 938 [2018]; People v Hunter, 73 AD3d at 1278).
Next, we reject defendant's contention that his counsel was ineffective. "To establish a claim of ineffective assistance of counsel, a defendant is required to come forward with proof that the attorney failed to provide meaningful representation and that there was no strategic or other legitimate explanations for counsel's allegedly deficient conduct" (People v Turner, 207 AD3d 889, 891 [3d Dept 2022] [internal quotation marks and citations omitted], lv denied 38 NY3d 1190 [2022]; see People v Stanton, 200 AD3d 1307, 1310 [3d Dept 2021], lv denied 38 NY3d 954 [2022]). "This standard is not amenable to precise demarcation and necessarily hinges upon the facts and circumstances of each particular case. A reviewing court must avoid confusing true ineffectiveness with mere losing tactics and according undue significance to retrospective analysis. In short, the Constitution guarantees a defendant a fair trial, not a perfect one" (People v Porter, 184 AD3d 1014, 1019 [3d Dept 2020] [internal quotation marks and citations omitted], lv denied 35 NY3d 1069 [2020]; accord People v Lafountain, 200 AD3d 1211, 1216 [3d Dept 2021], lv denied 38 NY3d 951 [2022]). "A claim will fail so long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation" (People v Calafell, 211 AD3d 1114, 1120 [3d Dept 2022] [internal quotation marks and citations omitted], lv denied 39 NY3d 1077 [2023]). Defense counsel engaged in discovery, filed an omnibus motion, moved to suppress evidence, had a clear trial strategy — including the defense of entrapment — effectively cross-examined witnesses and made a cogent closing statement. Viewing the record as a whole, we are satisfied that defendant was provided with meaningful representation (see People v Lekovic, 200 AD3d 1501, 1505 [3d Dept 2021], lv denied 38 NY3d 1008 [2022]; People v Smith, 193 AD3d 1260, 1268 [3d Dept 2021], lv denied 37 NY3d 968 [2021]).
Defendant lastly contends that the sentence imposed was harsh and excessive and should be reduced due to his poor health, substance abuse issues and the nonviolent nature of his crimes. We disagree. Defendant has a long arrest record, including multiple prior felony convictions. County Court further found that defendant did not have ties to the local area and traveled there from his home in Yonkers to sell dangerous, lethal drugs. The sentence imposed fell within the statutory range for defendant, a second felony offender (see Penal Law §§ 70.45 [2] [d]; 70.70 [3] [b] [i]; 220.16, 220.39). Under all of the circumstances, we do not find that [*6]the sentence imposed was unduly harsh or severe and decline his request to modify it in the interest of justice (see CPL 470.15 [3] [c]; [6] [b]).
Aarons, J.P., Reynolds Fitzgerald, Ceresia and McShan, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: The jury was charged regarding the fact that "sell" encompasses an "offer or agreement to sell even if actual delivery does not occur provided that at the time of the offer or agreement that person has the intent and ability to make the sale" (see Penal Law § 220.00 [1]; People v Mike, 92 NY2d 996, 998 [1998]).