McCarthy, J.P.
 

 Appeal from a judgment of the County Court of Madison County (McDermott, J.), rendered November 5, 2015, upon a verdict convicting defendant of the crimes of burglary in the second degree (two counts) and petit larceny.
 

 In connection with two home invasions, defendant was charged with two counts of burglary in the second degree and one count of petit larceny under an accomplice liability theory. After a jury trial, during which defendant’s accomplice, Benjamin Phetteplace, testified against him, defendant was convicted as charged and was sentenced, as a persistent violent felony offender, to 16 years to life in prison for each count of burglary in the second degree, to be served consecutively, and one concurrent year in jail for the petit larceny conviction. Defendant appeals.
 

 The evidence presented at trial was legally sufficient to support the convictions and the verdict is not against the weight of the evidence. A person commits burglary in the second degree by knowingly entering a dwelling with the intent to commit a crime therein (see Penal Law § 140.25 [2]; People v Furman, 152 AD3d 870, 871 [2017]). Petit larceny involves knowingly stealing property (see Penal Law § 155.25). Regarding accessorial liability, as is relevant here, “[w]hen one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he [or she] . . . intentionally aids such person to engage in such conduct” (Penal Law § 20.00; see People v Spencer, 152 AD3d 863, 864 [2017]).
 

 It is undisputed that Phetteplace broke into two residences with the intent to steal items from both, and he took jewelry from one of the residences, all without permission of the owners. The only question was whether defendant was Phet-teplace’s accomplice in these crimes. Phetteplace testified that he and defendant discussed and agreed to commit burglaries, defendant drove the vehicle, helped pick out potential target houses, dropped Phetteplace off, and would listen to a scanner and alert Phetteplace if police were coming, and Phetteplace called defendant when he was done so that defendant could pick him up. Nevertheless, “[a] defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense” (CPL 60.22 [1]; see People v Leduc, 140 AD3d 1305, 1306 [2016], lv denied 28 NY3d 932 [2016]). “The corroborating evidence, however, need not prove that the defendant committed the charged crime; rather it is enough if it tends to connect the defendant with the commission of the crime in such a way as may reasonably satisfy the [jury] that the accomplice is telling the truth” (People v Slaughter, 150 AD3d 1415, 1416 [2017] [internal quotation marks, brackets and citations omitted]; see People v Furman, 152 AD3d at 873).
 

 Other evidence corroborated Phetteplace’s testimony. Defendant’s girlfriend testified that, on the night in question, the two men left together and defendant said they were going out to make money. The arresting police officer saw defendant’s vehicle stuck in a snowbank a mile from the location of a burglar alarm call. Defendant was in the driver’s seat and stated that he had been forced off the road, but no other vehicle tracks were present in the newly fallen snow to substantiate his story. Fresh footprints in the snow led from the location of the second burgled residence (the location of the burglar alarm call) to the vehicle. When the same officer returned by tracking the footprints, he noticed jewelry thrown in the snow near defendant’s vehicle. That jewelry was later identified by its owner as having been stolen from the first burgled residence. When defendant was asked for the whereabouts of his “partner,” defendant answered that he was in the woods. Police tracked footprints that led away from defendant’s vehicle into the woods, eventually capturing Phetteplace. Viewing the evidence in the light most favorable to the People, this corroborating evidence, along with Phetteplace’s testimony, provided legally sufficient evidence to satisfy every element of the crimes with which defendant was charged (see People v Garcia, 131 AD3d 732, 733 [2015], lv denied 27 NY3d 997 [2016]; People v Brown, 62 AD3d 1089, 1090 [2009], lv denied 13 NY3d 742 [2009]). Considering the evidence in a neutral light, and according deference to the jury’s credibility determinations, defendant’s convictions for burglary in the second degree and petit larceny under a theory of accomplice liability are supported by the weight of the credible evidence (see People v Furman, 152 AD3d at 875; People v Ruiz, 148 AD3d 1212, 1215 [2017]; People v Anderson, 118 AD3d 1138, 1142 [2014], lv denied 24 NY3d 1117 [2015]).
 

 County Court did not err in finding that probable cause existed to support defendant’s arrest. The determination of a suppression motion by a hearing court is accorded great weight and will generally not be disturbed unless the record demonstrates that the court’s legal conclusion or resolution of credibility issues was clearly erroneous (see People v Williams, 25 AD3d 927, 928 [2006], lv denied 6 NY3d 840 [2006]). “Probable cause . . . ‘does not require proof sufficient to warrant a conviction beyond a reasonable doubt but merely information sufficient to support a reasonable belief that an offense has been or is being committed’ ” (People v Guthrie, 25 NY3d 130, 133 [2015] [emphasis omitted], quoting People v Bigelow, 66 NY2d 417, 423 [1985]).
 

 At the suppression hearing, the arresting officer testified that defendant’s story about being forced off the road was not supported by swerve marks or tire tracks that would indicate another vehicle was involved. The officer was aware of a burglar alarm call and that another officer had arrived and determined that an actual burglary had occurred. The other officer relayed that a single set of fresh footprints in the snow led away from the house, so the arresting officer began following the footprints along the rural road and traced them back to defendant’s vehicle. Although he had not seen any jewelry when he first encountered defendant 15 minutes earlier, upon his return, the officer saw jewelry thrown in the snow near the passenger side of the vehicle. County Court held that defendant, who “was found in close geographic and temporal proximity to the [second burglary],” offered “an implausible explanation” for his disabled vehicle and that, together with the fresh footprints leading to his vehicle from the crime scene and jewelry scattered in the snow, there was “ample probable cause” to support defendant’s arrest. While defendant presented plausible alternative explanations, and it was later discovered that the jewelry had not been taken from the nearby burgled residence, the officer’s testimony was not incredible as a matter of law and the record supports County Court’s determination that the officer had a reasonable belief that a crime had been committed. Accordingly, we will not disturb that determination.
 

 We need not decide whether defense counsel’s opening statement opened the door to admission of defendant’s prior bad acts. Even if County Court erred in finding that counsel opened the door, any such error did not deprive defendant of a fair trial because the court could have allowed admission of this evidence in the first place (see People v Denson, 26 NY3d 179, 187-188 [2015]; People v Morris, 21 NY3d 588, 597-598 [2013]; People v Alvino, 71 NY2d 233, 241-243 [1987]). The proffered evidence was relevant to defendant’s intent and to demonstrate a common scheme or plan with his accomplice, Phetteplace. Although evidence of prior similar crimes is always somewhat prejudicial, the amount and type of evidence that was introduced was limited; for example, the People did not—as they originally intended—call victims of several uncharged crimes to identify their stolen items that were seized from defendant’s storage unit. The People simply asked further questions of Phetteplace and defendant’s girlfriend, two witnesses who were scheduled to testify in any event.
 

 Additionally, upon the People’s renewal of their Molineux application, County Court had the authority to make a modification of its ruling (even without the door being opened). Defendant expresses concern with the timing of the court’s modification. However, a defendant is not entitled as a matter of law to be informed before trial that the People intend to offer Molineux evidence, and—while the better practice is for the People to make an application, and the court to rule thereon, before trial, as occurred here—it is permissible for the court to make a ruling on such evidence as late as “ ‘just before the witness testifies’ ” (People v Small, 12 NY3d 732, 733 [2009], quoting People v Ventimiglia, 52 NY2d 350, 362 [1981]). The court issued its modified ruling before any evidence was presented. Although defendant contends that he relied on the court’s initial ruling, a party can always move to renew an application, as the People did here, and defendant was alerted before trial to the possibility that the originally-excluded Molineux evidence could be introduced under certain circumstances. Moreover, the court gave repeated limiting instructions, advising the jury that the evidence of prior crimes could not be used for propensity purposes but only as proof of defendant’s intent relative to aiding Phetteplace in committing the charged crimes (see People v Morris, 21 NY3d at 598). Under the circumstances, we conclude that, regardless of whether County Court erred in finding that defendant opened the door, defendant was not deprived of a fair trial by the court’s determination to allow the Molineux evidence that was introduced.
 

 Furthermore, County Court properly denied defendant’s request for a jury charge that his girlfriend was an accomplice and that her testimony would therefore need to be corroborated. The record provides no factual support for the assertion that she participated in the charged offenses, possessed the required intent or importuned or aided defendant or Phetteplace to commit the instant crimes (see People v Brockington, 147 AD3d 460, 461 [2017], lv denied 29 NY3d 1029 [2017]). We also reject defendant’s argument that the supplemental jury instruction regarding accomplice liability denied him of a fair trial. To clarify any potential confusion, the court explained the People’s theory of how defendant acted in concert with Phet-teplace. Considering the charge as a whole, without taking isolated phrases out of context, the jury “would gather from its language the correct rules which should be applied in arriving at a decision,” and not be confused regarding the applicable law (People v Umali, 10 NY3d 417, 427 [2008] [internal quotation marks, brackets and citations omitted], cert denied 556 US 1110 [2009]).
 

 We have reviewed defendant’s remaining contentions and find them to be without merit.
 

 Lynch, Rose, Clark and Pritzker, JJ., concur.
 

 Ordered that the judgment is affirmed.