People v Holton (2018 NY Slip Op 02836)





People v Holton


2018 NY Slip Op 02836


Decided on April 26, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: April 26, 2018

107816

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
EDDIE HOLTON, Appellant.

Calendar Date: January 11, 2018

Before: Garry, P.J., Egan Jr., Lynch, Devine and Clark, JJ.


Philip K. Grommet, Vestal, for appellant.
Stephen K. Cornwell Jr., District Attorney, Binghamton (Peter N. DeLucia of counsel), for respondent.


Lynch, J.

MEMORANDUM AND ORDER
Appeal from a judgment of the County Court of Broome County (Smith, J.), rendered April 14, 2015, convicting defendant upon his plea of guilty of the crime of promoting prison contraband in the first degree.
In November 2013, defendant was being held as a pretrial detainee at the Broome County Correctional Facility, when correction officers conducted what was described as a "shakedown" of his housing unit. During the course of this event, defendant was taken to his cell where an ensuing strip search resulted in the recovery of a small packet of cocaine. Defendant was charged in a two-count indictment with the crimes of promoting prison contraband in the first degree and criminal possession of a controlled substance in the seventh degree. Following the denial
of his motion to suppress the cocaine, defendant pleaded guilty to the contraband charge in full satisfaction of the indictment. He was sentenced, as a second felony offender, to a prison term of 2 to 4 years. Defendant now appeals.
On this appeal, defendant takes no issue with the shakedown procedure per se. Instead, his sole contention is that correction officers recovered the cocaine through an unlawful manual body cavity search in violation of his rights under the Fourth Amendment. "[T]he defendant carries the burden of proof when he [or she] challenges the legality of a search and seizure, but the People have the burden of going forward to show the legality of the police conduct in the first instance" (People v Whitehurst, 25 NY2d 389, 391 [1969] [internal citation and emphasis [*2]omitted]; see CPL 710.60; People v Wesley, 73 NY2d 351, 358 [1989]).
Here, the record shows that, during the course of a strip search, defendant was directed to stand against a wall in his cell and squat. Adam Valls, a correction officer, testified that, at that point, he observed "a white item protruding from between defendant's [buttocks]." Valls explained that, when he saw the item — which was "a white wrapped item like something that was a container" — he asked defendant to spread his buttocks. When defendant failed to comply, he was forcibly placed face down on his bunk and handcuffed. Valls then saw the dime-sized white item protruding from between defendant's buttocks; he touched the item "and it moved so [he] took it." When asked whether the item felt loose when he touched it, Valls responded, "It came loose." Valls denied that he touched defendant, but explained that he "dislodged [the item] from [defendant's buttocks]." William Brown, Valls' supervisor, also testified that the item, which he recalled was about the size of a quarter, was "laying between defendant's buttocks" and that he directed Valls to "flick it out." Defendant's version was decidedly different. Defendant testified that Valls stuck his finger into defendant's rectum and pulled the object out. After crediting the testimony of Valls and Brown, County Court denied defendant's motion to suppress the physical evidence. We defer to that credibility determination (see People v Prochilo, 41 NY2d 759, 761 [1977]).
In People v Hall (10 NY3d 303 [2008], cert denied 555 US 938 [2008]), the Court of Appeals differentiated law enforcement's use of the "three distinct and increasingly intrusive types of bodily examinations" — the strip search, visual body cavity inspection and manual body cavity search (id. at 306; see People v Nicholas, 125 AD3d 1191, 1192 [2015]). Relevant here, a visual body cavity inspection involves the inspection of the subject's anal or genital areas without any physical contact by the officer and, in contrast, a manual body cavity search "includes some degree of touching or probing of a body cavity that causes a physical intrusion beyond the body's surface" (People v Hall, 10 NY3d at 306-307; see Harris v Miller, 818 F3d 49, 58 [2d Cir 2016]). Although the People maintain that defendant was not subjected to a manual body cavity search, we disagree. Indisputably, the item did not fall from defendant's body of its own accord during the strip search or the ensuing struggle, and Valls testified that the object had to be "dislodged" from between defendant's buttocks. Because a manual body cavity search is "the removal of an object protruding from a body cavity, regardless of whether any insertion into the body cavity is necessary," we find that defendant was subjected to such a search (People v Hall, 10 NY3d at 311; see People v Nicholas, 125 AD3d at 1192).
The further question is whether the correction officers needed a search warrant to conduct a manual body cavity search in a correctional facility setting where there is clearly a significant interest in maintaining the security and safety of the facility (see Florence v Board of Chosen Freeholders of County of Burlington, 566 US 318, 322 [2012]; Bell v Wolfish, 441 US 520, 546-547 [1979]; People v Brown, 154 AD3d 435, 436 [2017], lv denied 30 NY3d 1058 [2017]; People v McKanney, 56 AD3d 1049, 1050 [2008], lv denied 12 NY3d 760 [2009]). Importantly, this significant safety concern is not compromised by recognizing "that inmates retain a limited right to bodily privacy under the Fourth Amendment" (Harris v Miller, 818 F3d at 57; see Covino v Patrissi, 967 F2d 73, 78 [2d Cir 1992]). Where, as here, a challenge is made to an isolated search, "courts typically apply the standard set forth in Bell v Wolfish ([supra])" (Harris v Miller, 818 F3d at 58). That "test of reasonableness," which the Supreme Court of the United States applied to pretrial detainees in Bell, "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which is it is conducted" (Bell v Wolfish, 441 US at 559 [citations omitted]). Here, defendant does not challenge the record justification for the [*3]visual body cavity inspection, which was conducted by correction officers of the same gender in the privacy of his cell. The officers utilized force to place defendant on his bunk, but only after he failed to comply with their directives. The discovery of contraband was "highly relevant to the reasonableness" of the search (Harris v Miller, 818 F3d at 62), and, once the officers observed the protruding item, they had probable cause to believe that defendant had concealed contraband (see People v Hall, 10 NY3d at 312-313). The pivotal question is what steps the officers were entitled to take at that juncture under Bell.
The Court of Appeals has explained that "[t]he preeminent decision examining the constitutional dimensions of searches that involve police intrusion into a person's body is Schmerber v California (384 US 757 [1966])" (People v Hall, 10 NY3d at 307). Speaking to the validity of a body cavity search incident to arrest conducted at a police station, the Court explained that "it is evident that the location of a search is not the determinative factor under Schmerber because that decision prohibits all warrantless intrusions into an arrestee's body if there is no probable cause and exigent circumstances established, regardless of where the search occurs" (id. at 310 n 7; but see People v More, 97 NY2d 209, 214 n [2002]). This stricter legal standard applies "[b]ecause a manual body cavity search is more intrusive and gives rise to heightened privacy and health concerns" (People v Hall, 10 NY3d at 309).
Here, there was probable cause, but no showing or claim of an emergency (see People v Hall, 10 NY3d at 312-313). Considering that defendant was lying face down, naked and handcuffed, it is evident that the officers could keep him under full surveillance without any concern that the wrapped drugs would be absorbed into his body while efforts were made to procure a warrant (see People v More, 97 NY2d at 214). Nor was any attempt made to seek the assistance of medical personnel to secure the contraband in a safe, hygienic manner (see Harris v Miller, 818 F3d at 59). Also, the record is unclear as to whether Valls was wearing gloves. Under the second Bell factor, the manner in which this search was conducted was not reasonable. Given the above, we conclude that the search was conducted in violation of the Fourth Amendment and that the recovered drugs should have been suppressed. Accordingly, the judgment of conviction must be reversed, defendant's motion to suppress the contraband granted and the indictment dismissed.
Garry, P.J., concurs.




Clark, J. (concurring).


I agree with the majority that the manual body cavity search to which defendant was subjected violated his Fourth Amendment right to be free from an unreasonable bodily intrusion and, thus, that the recovered contraband should have been suppressed. However, I write separately because I reach this result by a different path.
Initially, like the majority, I find that defendant was subjected to a manual body cavity search. Unlike a visual body cavity inspection, which is limited to a purely visual inspection of the anal or genital areas, a "'manual body cavity search' includes some degree of touching or probing of a body cavity that causes a physical intrusion beyond the body's surface" (People v Hall, 10 NY3d 303, 306-307 [2008], cert denied 555 US 938 [2008]; see e.g. Harris v Miller, 818 F3d 49, 58 [2d Cir 2016]; Blackburn v Snow, 771 F2d 556, 561 n 3 [1st Cir 1985]). As the majority notes, defendant and the correction officers who were involved in the search provided differing accounts as to the degree of touching used to remove the packet of cocaine from between defendant's buttocks. County Court fully credited the version of events given by the [*4]correction officers, and, on appellate review, this Court must defer to those credibility determinations (see People v Prochilo, 41 NY2d 759, 761 [1977]; People v Acevedo, 118 AD3d 1103, 1106 [2014], lv denied 26 NY3d 925 [2015]; People v Hunter, 270 AD2d 712, 713 [2000]). Nevertheless, deferring to County Court's credibility determinations, the correction officers' testimony established that at least some level of physical contact was required and used to remove the contraband "from between [defendant's] buttocks." Thus, I agree with the majority that this case involves a manual body cavity search (see People v Hall, 10 NY3d at 311; People v Nicholas, 125 AD3d 1191, 1192 [2015]).
Notwithstanding our agreement as to the type of bodily examination performed, I diverge from the majority with respect to the standard that applies when assessing the constitutionality of a warrantless manual body cavity search of a pretrial detainee in a correctional facility setting — a question of first impression in New York. In my view, because of the unique and significant security and safety interests present in correctional facilities (see e.g. Florence v Board of Chosen Freeholders of County of Burlington, 566 US 318, 326 [2012]; Bell v Wolfish, 441 US 520, 559 [1979]; Harris v Miller, 818 F3d at 57; Hunter v Auger, 672 F2d 668, 674 [8th Cir 1982]; People v McKanney, 56 AD3d 1049, 1051 [2008], lv denied 12 NY3d 760 [2009]), neither a warrant nor exigent circumstances are required to conduct a manual body cavity search of a pretrial detainee, so long as the search is reasonable and, therefore, consistent with Fourth Amendment principles (see Bell v Wolfish, 441 US at 559; Harris v Miller, 818 F3d at 57, 62-63; Sanchez v Pereira-Castillo, 590 F3d 31, 43 [1st Cir 2009]; compare Schmerber v California, 384 US 757, 770 [1966]; People v Hall, 10 NY3d at 311; People v More, 97 NY2d 209, 214 [2002]).
While the Court of Appeals has held that either a warrant or exigent circumstances are required before a suspicious object may be removed from an arrestee's body cavity (see People v Hall, 10 NY3d at 306, 311), I would not extend that requirement to pretrial detainees in a correctional facility. Rather, I would solely apply the federal reasonableness test set forth in Bell v Wolfish (supra). Under that test, where, as here, the defendant's Fourth Amendment claim challenges an isolated search, courts must balance "the need for the particular search against the invasion of personal rights that the search entails" (Bell v Wolfish, 441 US at 559; see e.g. Byrd v Maricopa County Sheriff's Dept., 629 F3d 1135, 1141 [9th Cir 2011], cert denied 563 US 1033 [2011]; Security & Law Enforcement Employees v Carey, 737 F2d 187, 201 [2d Cir 1984]). To balance these conflicting interests, "[c]ourts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted" (Bell v Wolfish, 441 US at 559; see Harris v Miller, 818 F3d at 58; Byrd v Maricopa County Sheriff's Dept., 629 F3d at 1141; Sanchez v Pereira-Castillo, 590 F3d at 43).
Applying the four Bell factors to this case, I find the manual body cavity search to which defendant was subjected to be unreasonable. The record establishes that male correction officers conducted a warrantless visual body cavity inspection followed by the manual body cavity search, that such bodily intrusions occurred in the relative privacy of defendant's prison cell and that the officers had sufficient justification for initiating the visual body cavity inspection, which led to their observation of the contraband protruding from between defendant's buttocks. However, once the correction officers had defendant subdued and lying naked and face down in handcuffs, they chose to proceed with the most invasive of searches — the manual body cavity search — without seeking the guidance and assistance of medical personnel, who could have ensured that the contraband was removed from defendant's buttocks in a safe and hygienic manner (see Sanchez v Pereira-Castillo, 590 F3d at 43; cf. Daughtery v Harris, 476 F2d 292, 295 [*5][10th Cir 1973], cert denied 414 US 872 [1973])[FN1]. There is no indication in the record that the circumstances required the immediate removal of the drugs from defendant's buttocks, such that the correction officers did not have time to seek medical assistance (see United States v Fowlkes, 804 F3d 954, 966 [9th Cir 2015]). Under these circumstances, I agree with the majority that the manual body cavity search did not comply with the requirements of the Fourth Amendment and that County Court therefore should have granted defendant's motion to suppress the drugs (see id. at 968).




Egan Jr., J. (dissenting).


We respectfully dissent as we would defer to County Court's factual findings and credibility determinations with regard to the nature and reasonableness of this search (see People v Strauss, 155 AD3d 1317, 1319-1320 [2017]; People v Williams, 25 AD3d 927, 928 [2006], lv denied 6 NY3d 840 [2006]).
We recognize that, "[w]hile an inmate does not forfeit all constitutional rights at the prison door, many of those rights — including [Fourth] Amendment protections — are tempered by the fact of incarceration and the importance of maintaining the security and safety of the facility" (People v McKanney, 56 AD3d 1049, 1050 [2008], lv denied 12 NY3d 760 [2009]; see Florence v Board of Chosen Freeholders of County of Burlington, 566 US 318, 326-329 [2012]; Block v Rutherford, 468 US 576, 587-588 [1984]; Hudson v Palmer, 468 US 517, 527-530 [1984]; Bell v Wolfish, 44 US 520, 559-560 [1979]). In determining the constitutionality of a body cavity search within a correctional facility, the applicable test is one of reasonableness in which the legitimate security interests of the facility are balanced against an inmate's privacy interests by "considering the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted" (People v McKanney, 56 AD3d at 1050 [internal quotation marks, brackets and citations omitted]; see Florence v Board of Chosen Freeholders of County of Burlington, 566 US at 326-329; Bell v Wolfish, 44 US at 559-560; People v Brown, 154 AD3d 435, 436-437 [2017], lv denied 30 NY3d 1058 [2017]).
As the majority notes, defendant does not dispute the record justification for initiating the subject strip and body cavity search (i.e., defendant's suspicious conduct and noncompliance with the correction officer's orders), nor the location in which the search was carried out (i.e., within the privacy of his cell by correction officers of the same gender). Rather, the dispute concerns the scope of and manner in which the body cavity search was conducted. As relevant here, a "visual body cavity inspection" occurs when a law enforcement officer observes, but does not touch, a defendant's "anal or genital cavities" (People v Hall, 10 NY3d 303, 306 [2008], cert denied 555 US 938 [2008]). A "manual body cavity search," on the other hand, "includes some degree of touching or probing of a body cavity that causes a physical intrusion beyond the body's surface" (id. at 306-307).
The testimony adduced at the suppression hearing with respect to the nature and intrusiveness of the search that defendant was subjected to provided two contrasting narratives. Adam Valls, a correction officer, and Sergeant William Brown, his supervisor, testified on behalf of the People and indicated that they both participated in a routine correctional facility search or [*6]"shakedown" of defendant's housing unit. Valls testified that, during the search, defendant's conduct gave him suspicion to believe that he possessed contraband and that defendant was thereafter noncompliant with his request to remove his hand from the back of his pants. During the ensuing strip search, Valls observed a white item protruding from defendant's buttocks when he squatted. Brown testified that he was standing only a couple of feet away and, although the item did not fall out at that point in time, defendant was clenching his butt cheeks together. Valls testified that defendant refused two additional commands to spread his butt cheeks and, based on his continued noncompliance, the officers forcibly took him down to his bunk. The officers unequivocally testified that, upon being taken down to his bunk, it was evident that the white item they observed protruding from defendant's buttocks was not located in defendant's rectum, but instead was "laying" in the area between defendant's buttocks in such a manner that it was not necessary for Valls to physically touch defendant in order to obtain possession thereof (compare People v Nicholas, 125 AD3d 1191, 1192 [2015]). Defendant, in contrast, testified to a much more invasive search, indicating that he was held facedown on his bunk while a correction officer forcibly removed the subject item from his rectum with his fingers.
To the extent that these conflicting narratives presented credibility issues to be resolved by the suppression court, it was within County Court's discretion as the finder of fact to "fully credit" the testimony of the correction officers and reject that of defendant (see People v Strauss, 155 AD3d at 1319-1320; People v Locke, 25 AD3d 877, 878 [2006], lv denied 6 NY3d 835 [2006]). We find nothing in the record to suggest that the testimony of Valls or Brown was patently tailored to nullify constitutional objections (see People v Steigler, 152 AD3d 1083, 1084 [2017], lv denied 30 NY3d 983 [2017]; People v Keith, 240 AD2d 967, 968 [1997], lvs denied 90 NY2d 906, 912 [1997]; People v Arias, 209 AD2d 862, 863 [1994], lvs denied 85 NY2d 859, 866 [1995]; compare People v Lewis, 195 AD2d 523 [1993], lv denied 82 NY2d 898 [1993]) or was otherwise rendered unworthy of belief or incredible as a matter of law.
Based on the inherent security concerns within a correctional facility, defendant's suspicious behavior, his noncompliance with the correction officer's orders, the fact that Valls and Brown both readily observed the white item and had probable cause to believe that defendant possessed contraband and the nature of the retrieval of same as described by Valls and Brown — whom County Court found to be credible — we find that the evidence establishes that defendant was subjected to a reasonable visual body cavity inspection (see People v Brown, 154 AD3d at 436-437; People v McKanney, 56 AD3d at 1050; People v Pagan, 304 AD2d 980, 980-981 [2003], lv denied 100 NY2d 564 [2003]; see also Florence v Board of Chosen Freeholders of County of Burlington, 566 US at 328; Bell v Wolfish, 441 US at 559). The scope of the intrusion and the nature of the search were reasonable insofar as there was no touching, probing or physical intrusion beyond the surface of defendant's body; thus, contrary to the majority's holding, the officers were not required to obtain a warrant in order for the officers to take possession of the contraband (compare Schmerber v California, 384 US 757 [1966]; People v Hall, 10 NY3d at 312-313; People v More, 97 NY2d 209, 212-215 [2002]; People v Nicholas, 125 AD3d at 1192). Accordingly, giving deference to County Court's credibility determinations, we find that the search of defendant was reasonable and, therefore, we would affirm the judgment of conviction.
Devine, J., concurs.
ORDERED that the judgment is reversed, on the law, motion to suppress granted, and indictment dismissed.



Footnotes

Footnote 1: As the majority points out, the record is unclear as to whether the correction officer who removed the contraband from between defendant's buttocks was wearing gloves when he did so.