People v Brown (2021 NY Slip Op 03633)





People v Brown


2021 NY Slip Op 03633


Decided on June 10, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:June 10, 2021

110743
[*1]The People of the State of New York, Respondent,
v
David Brown, Appellant.

Calendar Date:April 20, 2021

Before:Garry, P.J., Egan Jr., Aarons, Pritzker and Reynolds Fitzgerald, JJ.

Mark Diamond, Albany, for appellant.
P. David Soares, District Attorney, Albany (Emily Schultz of counsel), for respondent.



Pritzker, J.
Appeal from a judgment of the Supreme Court (Lynch, J.), rendered September 20, 2018 in Albany County, upon a verdict convicting defendant of the crime of burglary in the second degree.
Following a jury trial, defendant was convicted of burglary in the second degree stemming from the theft of a television from an apartment located at 216 Ontario Street in the City of Albany. Supreme Court thereafter sentenced defendant to a prison term of 3½ years, with five years of postrelease supervision. Defendant appeals.
Defendant challenges the verdict as legally insufficient and against the weight of the evidence claiming that the People failed to prove beyond a reasonable doubt that he in fact entered the apartment and that he had the requisite intent to steal the television, as he was operating under the belief that his companion lived in the apartment and owned the television. "When considering a challenge to the legal sufficiency of the evidence, [this Court must] view the evidence in the light most favorable to the People and evaluate whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crime charged" (People v Hernandez, 180 AD3d 1234, 1235 [2020] [internal quotation marks and citations omitted], lv denied 35 NY3d 993 [2020]; see People v Nunes, 168 AD3d 1187, 1187-1188 [2019], lv denied 33 NY3d 979 [2019]). "In reviewing whether a conviction is supported by the weight of the evidence, we decide whether, based on all the credible evidence, a different finding would not have been unreasonable, and then, like the trier of fact below, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (People v Maeweather, 172 AD3d 1646, 1647 [2019] [internal quotation marks and citations omitted], lv denied 34 NY3d 1017 [2019]; see People v Saylor, 173 AD3d 1489, 1490 [2019]).
As relevant here, a person is guilty of burglary in the second degree when he or she knowingly enters a dwelling with the intent to commit a crime therein (see Penal Law § 140.25 [2]; see People v Strauss, 155 AD3d 1317, 1318 [2017], lv denied 31 NY3d 1122 [2018]). Further, "[a]s relevant to accessorial liability, when one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he or she . . . intentionally aids such person to engage in such conduct" (People v Chapman, 182 AD3d 862, 864 [2020] [internal quotation marks and citations omitted]; see People v Strauss, 155 AD3d at 1318).
The trial testimony provided by the three occupants of the apartment from which the television was stolen established that their apartment was located on the second [*2]floor of the house at 216 Ontario Street. Two of the residents reported hearing footsteps pass by their bedrooms on the morning of the burglary, at approximately the same time. Video evidence admitted at trial placed defendant and his companion walking towards the apartment at approximately 5:34 a.m. on the morning of the burglary. Footage from the City's surveillance cameras then captured the two men walking away from the general direction of the apartment approximately 10 minutes later, with defendant carrying a television. As a car approached from behind the two men, defendant placed the television against a building amid bushes as the other man continued on, walking out of the camera's view. Defendant then turned to face the street as he watched the car drive by. Defendant briefly walked out of the camera's view, before returning seconds later with the other man. Defendant retrieved the television and the two proceeded on in the same direction.
The People also admitted into evidence excerpts of recorded telephone calls between defendant and his girlfriend that he had placed from jail. In these calls, defendant identified his companion as a man named "King" and, in the first recorded call, defendant described that King had asked defendant to go with him to pick something up, and that defendant thought the apartment was "maybe [King's] house." However, defendant then stated that he knew whose house it was, and that he "should have known it wasn't [King's]." In a later call, defendant admitted that he "obviously did know better but just did the wrong thing anyway." Defendant also acknowledged that he knew who the television was ultimately sold to and that he had received a small payment from King for his assistance. Although defendant explained that he could not remember much of that day, he acknowledged that "it was King's mark." Noting that King had passed away a week after the burglary, defendant stated, "[T]his is a saving grace. Also a bit of a problem, but in the long run, I don't have somebody who's going to tell on me and then, of course, he committed burglary and it all falls on him." In another call, defendant framed his conduct as an "effect of [his] addiction" and described this as "another option" for his defense "if it doesn't go the way we want it to go."
Defendant testified on his own behalf and explained that, on the morning of the burglary, he ended his shift as a line cook at 2:30 a.m., went home, took unprescribed Xanax and then went to a local corner store, where he ran into King, whom he had known for a few years. Defendant stated that, at the time, he had a problem with substance abuse and was drinking heavily. Defendant testified that King asked him to help move a television and that King "didn't specify where to or where from." Defendant agreed, in the hopes of getting drugs in return for his assistance. As the two set out, defendant claimed that he was "under the assumption" that they would be picking [*3]up the television from King's house, although he did not know where King lived at the time. When they arrived at 216 Ontario Street, defendant reported that King told him to wait outside. Defendant testified that he did not know who lived there. Defendant described that King entered the house through the front door and reemerged with a television, which defendant then offered to carry due to its size. Defendant went on to testify that, as the two walked with the television, it began to rain, so he put the television down under some bushes while King looked for something to cover it with. Realizing that the two were close to defendant's apartment, defendant offered to use something of his own to protect the television from the rain. Defendant stated that the two then walked to his house, that he found a tarp or sheet to wrap the television in and the two then proceeded to walk downtown, where King then sold the television. Explaining that King often "peddle[d] his things to get money," defendant claimed that he never suspected that King was in fact committing a crime. On cross-examination, defendant claimed that, although he had stated in conversations with his girlfriend that he knew who lived at 216 Ontario Street, he did not actually know who lived there.
Based on the foregoing, defendant's conviction on a theory of accessorial liability is supported by legally sufficient evidence. Notably, defendant does not challenge that the burglary occurred in his presence or that he possessed the stolen television. Rather, he claims that he did not enter the apartment and was not otherwise aware that King did not have the right to possess the television. However, defendant admitted in conversation with his girlfriend that he knew who lived in the house and described the incident as King's "mark," suggesting that defendant was indeed aware of the illegal purpose of their visit to the apartment. Defendant went so far as to express to his girlfriend that he knew better, but chose to participate regardless. Further, the video footage of defendant seeming to hide the television as a car passed by him and King as they left the area of the apartment suggests that defendant knew that he was not supposed to possess the television (see People v La Furno, 104 AD2d 1008, 1008 [1984]; see generally People v Spencer, 152 AD3d 863, 866 [2017], lv denied 30 NY3d 983 [2017]). Given these details, a valid line of reasoning and permissible inferences could lead a rational person to conclude that defendant had the requisite intent to steal the television, permitting the jury to find him guilty even in the absence of evidence demonstrating that he physically entered the apartment at 216 Ontario Street (see People v Shamsuddin, 167 AD3d 1334, 1335 [2018], lv denied 33 NY3d 953 [2019]; see People v Strauss, 155 AD3d at 1319; People v Gage, 259 AD2d 837, 838-839 [1999], lvs denied 93 NY2d 924, 970 [1999]; People v McDonald, 257 AD2d 695, 696 [1999], lv denied 93 NY2d [*4]876 [1999]).
Turning to the weight of the evidence, a different verdict would not have been unreasonable inasmuch as no direct evidence placed defendant in the apartment and the jury could have credited defendant's testimony that he was unaware of King's illegal conduct (see People v Porter, 184 AD3d 1014, 1017 [2020], lv denied 35 NY3d 1069 [2020]). However, the jury appears to have found defendant's explanation that he did not enter the apartment and did not know that the television was stolen disingenuous given the comments he made during the telephone call with his girlfriend (see id. at 1017-1018). Therefore, according great deference to the jury's credibility determination, and viewing the evidence in a neutral light, we find that the verdict is supported by the weight of the evidence (see People v Walker, 191 AD3d 1154, 1158 [2021]; People v Porter, 184 AD3d at 1018; People v Gage, 259 AD2d at 839).
Defendant's contention that Supreme Court erred by admitting his recorded phone conversations placed from jail because he had no notice that his calls were being recorded is belied by the record. "As a number of courts have explained, where detainees are aware that their phone calls are being monitored and recorded, all reasonable expectation of privacy in the content of those phone calls is lost, and there is no legitimate reason to think that the recordings, like any other evidence lawfully discovered, would not be admissible" (People v Diaz, 33 NY3d 92, 99-100 [2019] [internal quotation marks and citations omitted], cert denied ___ US ___, 140 S Ct 394 [2019]; see People v Russ, 162 AD3d 1306, 1306 [2018]). In introducing the recordings, the People called an officer with the Albany County Sheriff's office who testified that all phone calls made to or from an inmate at the Albany County Correctional Facility are recorded, with the exception of certain privileged communications. The officer explained that the recording system used to monitor the phone lines at the facility has a mechanism in place that notifies both parties that all calls may be recorded and monitored. The officer described that the parties have to press a certain number accepting those terms in order for the call to connect. The officer explained that, if the recording system is not working properly, it will not allow calls to connect or continue. Notably, one of the recordings in question that was played at trial includes the warning provided by the recording system, which clearly states that the call is "subject to monitoring and recording." Significantly, in his own testimony, defendant also acknowledged that he was aware that the phone calls that he placed from the jail were being recorded and could be reviewed by law enforcement. Thus, it is clear from the record that defendant was aware that the phone calls were being recorded and, as such, he had no reasonable expectation of privacy over them (see People v Diaz, 33 NY3d at 99-100; People v Russ, 162 AD3d at [*5]1306). To the extent that defendant argues that the admission of the phone calls violated his rights because he was being held on bail rather than serving a sentence, the Court of Appeals has yet to differentiate as to the applicable constitutional standard as between phone calls placed by those individuals held on bail and those who are serving sentences (see People v Diaz, 33 NY3d at 95-96; People v Johnson, 27 NY3d 199, 206 [2016]). As such, the recordings were properly admitted.
Finally, defendant asserts that comments made by the prosecutor during summation constitute prosecutorial misconduct. However, as defendant concedes, this argument is not preserved as his trial counsel did not object at trial (see CPL 470.05 [2]; People v Andrade, 172 AD3d 1547, 1553 [2019], lvs denied 34 NY3d 928, 937 [2019]). Were this issue before us, we would find that the challenged comments constituted fair comment on the evidence (see People v Johnson, 183 AD3d 77, 90 [2020], lv denied 35 NY3d 993 [2020]), and, even if any of the remarks were improper, "they were not so pervasive or flagrant as to require a reversal" (People v Johnson, 151 AD3d 1462, 1466 [2017] [internal quotation marks and citations omitted], lv denied 30 NY3d 1106 [2018]). Defendant also argues that trial counsel was ineffective based solely upon the failure to object to the challenged comments. However, "because any such objections would have had little or no chance of success, defendant's ineffective assistance claim is unavailing" (People v Andrade, 172 AD3d at 1554; see People v Caban, 5 NY3d 143, 152 [2005]).
Garry, P.J., Egan Jr., Aarons and Reynolds Fitzgerald, JJ., concur.
ORDERED that the judgment is affirmed.