People v Drayton (2020 NY Slip Op 02824)





People v Drayton


2020 NY Slip Op 02824


Decided on May 14, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 14, 2020

109292

[*1]The People of the State of New York, Respondent,
v
Richard Drayton, Appellant.

Calendar Date: March 24, 2020

Before: Garry, P.J., Egan Jr., Lynch, Aarons and Reynolds Fitzgerald, JJ.


Cliff Gordon, Monticello, for appellant, and appellant pro se.
Meagan K. Galligan, Acting District Attorney, Monticello, for respondent.



Egan Jr., J.
Appeal from a judgment of the Supreme Court (Schick, J.), rendered February 7, 2017 in Sullivan County, upon a verdict convicting defendant of the crimes of robbery in the second degree and conspiracy in the fourth degree.
In January 2016, defendant was indicted for two counts of robbery in the second degree, two counts of conspiracy in the fourth degree and one count of resisting arrest, stemming from the armed robbery of a confidential informant (hereinafter the victim) during a police-monitored controlled purchase of heroin and guns in the Village of Monticello, Sullivan County. The indictment charged defendant as having acted in concert with four other codefendants in a scheme to rob the victim. Defendant's case was subsequently severed from that of his codefendants and, following a jury trial, he was convicted of one count of robbery in the second degree and one count of conspiracy in the fourth degree.[FN1] Supreme Court denied defendant's subsequent motions seeking to set aside the verdict and for a new trial. He was thereafter sentenced, as a second felony offender, to a prison term of 12 years, to be followed by five years of postrelease supervision, on the robbery count, to run concurrently with a prison term of 2 to 4 years on the conspiracy count. Defendant appeals.
Defendant contends that there was legally insufficient evidence to support his conviction for conspiracy in the fourth degree and that the verdict was against the weight of the evidence. Initially, inasmuch as defendant failed to renew his motion to dismiss for lack of legally sufficient evidence following the close of his proof, his legal sufficiency claim is unpreserved for appellate review (see People v Hawkins, 11 NY3d 484, 492 [2008]; People v Trappler, 173 AD3d 1334, 1334-1335 [2019], lv denied 34 NY3d 985 [2019]). However, this Court's weight of the evidence review necessarily includes an evaluation of whether all the elements of the charged crimes were proven beyond a reasonable doubt (see People v Danielson, 9 NY3d 342, 348-349 [2007]). When conducting a weight of the evidence review, "if a different result would not have been unreasonable, this Court must weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported" (People v Turner, 178 AD3d 70, 73 [2019] [internal quotation marks and citation omitted]; see People v Bleakley, 69 NY2d 490, 495 [1987]).
As relevant here, to be found guilty of robbery in the second degree, the People were required to prove that defendant forcibly stole property and, "[i]n the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . [d]isplay[ed] what appear[ed] to be a pistol, revolver . . . or other firearm" (Penal Law § 160.10 [2] [b]). To be found guilty of conspiracy in the fourth degree, the People were required to prove that defendant intended to engage in conduct constituting a class B or C felony and that, "he . . . agree[d] with one or more persons to engage in or cause the performance of such conduct" (Penal Law § 105.10 [1]).
The evidence at trial established that, on January 7, 2016, Rashad Kearse, Donovan Price and defendant's brother, Frank Drayton, met at Drayton's hotel room where they were shown two guns that Drayton had for sale.[FN2] Kearse and Price thereafter left the hotel room and met with codefendant Matthew Miller and told him about the guns. In turn, Miller contacted the victim, whom he had regularly sold heroin to in the past and who he knew was also looking to purchase guns. Unbeknown to Miller, however, the victim was a confidential informant for the Hudson Valley Safe Streets Task Force and, following a series of text messages, the victim arranged to meet Miller at an apartment complex that evening to conduct a controlled purchase of heroin and two guns.[FN3]
Prior to meeting with the victim, Miller, Kearse, Drayton, Price and defendant met at Miller's apartment and discussed the pending sale of the heroin and guns to the victim. According to Kearse, following this discussion, all five left Miller's apartment with the understanding "that a robbery was most likely going to take place" and that they would thereafter meet back at the apartment and split the proceeds thereof. Defendant left the apartment wearing a purple Phoenix Suns jacket. The police, meanwhile, searched the victim for contraband, equipped him with an audio/video recording device, provided him with $860 in prerecorded buy money and dropped him off at a prearranged location within the apartment complex to consummate the purchase. Upon arrival, the victim met Miller and Price, whereupon Miller handed the victim a quantity of heroin and showed him a case that contained a pistol. The victim, Miller and Price then walked toward a wooded area at the rear of the complex where they were then accosted by two males with guns, one wearing a black jacket, who was later identified as Drayton, and one wearing a purple jacket. Drayton emptied the victim's pockets, taking the prerecorded buy money, heroin and the victim's cell phone, while the individual in the purple jacket kept his gun pointed at the victim's head and torso. When the victim subsequently pleaded to get his cell phone back, Drayton fired a shot in the victim's direction. The victim fled unharmed and, as he did so, he observed a light-colored minivan pass by as the individual in the purple jacket — whom the victim had not previously met — ran up to him and returned his cell phone. The police, having heard the gunshot, extracted the victim from the apartment complex and debriefed him nearby. The codefendants briefly regrouped at Miller's apartment, portions of the robbery proceeds were divvied up and they then left the apartment complex in a light-colored minivan. After exiting the complex, the victim observed the minivan pass by and, following a brief police chase, the van came to a stop and three individuals exited the vehicle and fled on foot, including the individual in the purple jacket.[FN4]
Although the individual in the purple jacket was not apprehended that evening, during a subsequent search of the area where he fled, police discovered a purple jacket, a sock, a blue pair of sweatpants containing defendant's driver's license and a magazine with blank rounds of ammunition. A search of the minivan also revealed a wallet containing defendant's Social Security card. Subsequent testing established that defendant was the major DNA contributor to the purple jacket, sock, sweatpants and magazine. Upon listening to the audio/video recording of the robbery, a detective on the task force who had prior dealings with defendant identified him as the voice on the recording. Kearse testified that defendant participated in the planning and execution of the robbery and that defendant was wearing a purple jacket, and the victim testified that he was held at gunpoint and robbed by Drayton and the individual in the purple jacket.
Although a different verdict would not have been unreasonable, viewing the foregoing evidence in a neutral light, we find that defendant's convictions are not against the weight of the evidence. The evidence identifying defendant as the individual in the purple jacket was overwhelming and, contrary to defendant's assertion, the fact that he subsequently returned the victim's cell phone within minutes after it was initially stolen did not serve to negate his intent to hold the victim at gunpoint and forcibly steal his money and heroin (see People v Lamont, 25 NY3d 315, 319 [2015]; People v Deleon, 149 AD3d 1273, 1274 [2017], lv denied 29 NY3d 1077 [2017]; People v Ramos, 12 AD3d 316, 316 [2004], lv denied 4 NY3d 767 [2005]). To the extent that defendant claims that the testimony of the victim and Kearse was not credible, these issues were fully explored before the jury on both direct and cross-examination and ultimately posed a credibility determination for the jury to resolve (see People v Criss, 151 AD3d 1275, 1279 [2017], lv denied 30 NY3d 979 [2017]). Further, ample evidence was presented from which the jury could find that, prior to the robbery, defendant knowingly entered into an agreement, either express or implied, with his codefendants to rob the victim and thereafter executed said plan when he and Drayton held the victim at gunpoint and stole his property, supporting his convictions for robbery in the second degree and conspiracy in the fourth degree (see People v Leduc, 140 AD3d 1305, 1307 [2016], lv denied 28 NY3d 932 [2016]; People v Brown, 249 AD2d 835, 836 [1998]; People v Givens, 181 AD2d 1031, 1031-1032 [1982], lv denied 79 NY2d 1049 [1992]; see also People v Wilson, 173 AD3d 1853, 1854 [2019]).
Defendant's contention that he was deprived of a fair trial as a result of prosecutorial misconduct based on comments that the prosecutor made during the direct examination of the victim and summation was not preserved for appellate review, as he failed to render contemporaneous objections to these comments during the trial (see People v Johnson, ___ AD3d ___, ___, 2020 NY Slip Op 01668, *1 [2020]; People v Wynn, 149 AD3d 1252, 1255-1256 [2017], lv denied 29 NY3d 1136 [2017]). Nor are we persuaded that defense counsel's failure to timely object to these comments constituted ineffective assistance of counsel (see People v Fragassi, 178 AD3d 1153, 1156-1157 [2019], lv denied 34 NY3d 1128 [2020]; People v Pitt, 170 AD3d 1282, 1286 [2019], lv denied 33 NY3d 1072 [2019]). We are similarly unpersuaded by defendant's contention that defense counsel's cross-examination of Kearse and the victim demonstrated that he received ineffective assistance of counsel. Defense counsel extensively cross-examined the victim and Kearse, attacked their credibility, noted their criminal histories and respective cooperation agreements with the People, noted the victim's heroin addiction and challenged the victim's identification of defendant as one of the perpetrators. Defense counsel also challenged Kearse's version of events on cross-examination and established that Kearse gave inconsistent statements during his grand jury testimony in order to minimize his conduct. Accordingly, reviewing the totality of defense counsel's representation, we are satisfied that defendant was provided with meaningful representation (see People v Wragg, 26 NY3d 403, 412 [2015]; People v Thorpe, 141 AD3d 927, 935 [2016], lv denied 28 NY3d 1031 [2016]).
The remaining arguments raised in defendant's supplemental pro se brief do not require extended discussion. Defendant's jurisdictional challenge to the underlying felony complaints was rendered academic, as these complaints were subsequently superseded by a valid indictment (see People v Thacker, 173 AD3d 1360, 1362 [2019], lv denied 34 NY3d 938 [2019]). Contrary to defendant's assertion, Kearse's cooperation agreement with the People was extensively discussed at trial and defense counsel was able to thoroughly cross-examine him with regard thereto, rendering meritless his claim that the People failed to disclose such an agreement pursuant to Brady v Maryland (373 US 83 [1963]). Finally, to the extent that defendant claims that his arrest was unlawful, he failed to preserve this issue for review by making an appropriate motion before Supreme Court (see CPL 470.05 [2]; People v Collier, 146 AD3d 1146, 1147 [2017], lv denied 30 NY3d 948 [2017]). To the extent not specifically addressed, defendant's remaining claims have been reviewed and found to be without merit.
Garry, P.J., Lynch, Aarons and Reynolds Fitzgerald, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: Supreme Court dismissed the resisting arrest count prior to submission of the case to the jury.

Footnote 2: The two guns were starter pistols, not operational firearms.

Footnote 3: The victim also participated in a controlled purchase of heroin from Miller at the same location the day before, January 6, 2016.

Footnote 4: Miller and Kearse remained in the vehicle and were taken into custody and, after a brief foot pursuit, Drayton was also taken into custody. Price was arrested the next day following the execution of a search warrant, and defendant was arrested following a traffic stop on January 20, 2016.