People v Porter (2020 NY Slip Op 03570)





People v Porter


2020 NY Slip Op 03570


Decided on June 25, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: June 25, 2020

109922

[*1]The People of the State of New York, Respondent,
v
Gerald Porter, Appellant.

Calendar Date: May 20, 2020

Before: Garry, P.J., Egan Jr., Mulvey, Devine and Colangelo, JJ.


Adam H. Van Buskirk, Auburn, for appellant.
Michael A. Korchak, District Attorney, Binghamton (Rita Basile of counsel), for respondent.



Colangelo, J.
Appeal from a judgment of the County Court of Broome County (Cawley Jr., J.), rendered September 21, 2017, upon a verdict convicting defendant of the crimes of burglary in the second degree and criminal possession of stolen property in the fifth degree.
In November 2016, defendant was charged by indictment with burglary in the second degree and criminal possession of stolen property in the fifth degree based upon allegations that he allegedly entered the apartment of another with intent to steal property and thereafter possessed stolen property. Following a jury trial, defendant was convicted as charged and thereafter sentenced, as a second violent felony offender, to a prison term of eight years, followed by 15 years of postrelease supervision, on the burglary conviction and to a lesser concurrent prison term on the conviction of criminal possession of stolen property. Defendant appeals.
Defendant contends that his convictions were not supported by legally sufficient evidence and were against the weight of the evidence, as the People failed to prove that he had the intent to commit the crimes. Initially, as defendant's motion for a trial order of dismissal at the close of proof was "not directed at the specific argument[] he raises on appeal, [his] legal sufficiency claim is unpreserved" (People v Shackelton, 177 AD3d 1163, 1165 [2019], lv denied 34 NY3d 1162 [2020]; see People v Gray, 86 NY2d 10, 19-20 [1995]; People v Youngs, 175 AD3d 1604, 1606 [2019]). Nevertheless, in reviewing whether the verdict is against the weight of the evidence, this Court necessarily must ensure that the People proved each element of the crimes beyond a reasonable doubt (see People v Vega, 170 AD3d 1266, 1268 [2019], lv denied 33 NY3d 1074 [2019]). "In conducting such a review, where an acquittal would not have been unreasonable, we view the evidence in a neutral light and, while giving deference to the jury's credibility determinations, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (People v Brinkley, 174 AD3d 1159, 1160-1161 [2019] [internal quotation marks and citations omitted], lv denied 34 NY3d 979 [2019]; see People v Shabazz, 177 AD3d 1170, 1171 [2019]).
As relevant here, "[a] person is guilty of burglary in the second degree when he [or she] knowingly enters or remains unlawfully in a building with intent to commit a crime therein, and when . . . [t]he building is a dwelling" (Penal Law § 140.25 [2]). With respect to criminal possession of stolen property in the fifth degree, the People are required to prove that the defendant "knowingly possesse[d] stolen property, with intent to benefit himself [or herself] or a person other than an owner thereof or to impede the recovery by an owner thereof" (Penal Law § 165.40).
Daniel Flanders, a police sergeant with the City of Binghamton Police Department, testified at the trial that he and other officers responded to an apartment in the City of Binghamton, Broome County, where it was reported that Gordon Gibson passed away. Flanders observed a television, stereo and DVD player in Gibson's living room and an air conditioner in his kitchen window. They removed Gibson's wallet, exited the apartment and locked the door. Because Gibson had been a client of Catholic Charities of Broome County (hereinafter Catholic Charities),[FN1] and at the request of Gibson's aunt, two employees of Catholic Charities, John Wirth and Conor Johns, entered Gibson's apartment to take care of anything that needed immediate attention, and they saw the same electronic items observed by Flanders. Johns and Wirth entered the apartment with a key and locked the apartment door when they left. Three days later, Johns returned to Gibson's apartment with another Catholic Charities employee and saw that the apartment door was open, that the television and stereo were missing and that the shelves were empty. The air conditioner was damaged and was on the floor next to the kitchen window, which was also damaged. The police were called and promptly responded.
Anthony Diles, a police sergeant, testified that he went to defendant's apartment a few days after the reported burglary and informed defendant that the police had information that defendant may have removed some items from Gibson's apartment after Gibson had died. Defendant initially denied removing anything from Gibson's apartment; however, Diles observed an LG stereo that appeared to be new or the same make as the stereo that had been reported stolen and, upon obtaining defendant's permission to check the serial number on the stereo, discovered that it matched the serial number of the stereo that had been reported stolen. Defendant then showed Diles a 40-inch Samsung flat screen television that he had taken and retrieved a red plastic bucket from a closet that contained, among other things, a Funai DVD player, a cable box and a remote, all of which had been reported stolen. Diles testified that defendant admitted having taken those items to his apartment. Defendant told Diles that "he believed that after . . . Gibson had died . . . Gibson had no need for [the items] anymore . . . and that as they were friends there would be no problem with [defendant] taking possession of those items." Diles testified that defendant also told him that "he knew that . . . it was not legal for him to enter the apartment or to remove those items and that he knew it was wrong."
In a subsequent written statement made to police that was introduced into evidence at trial, defendant admitted that "[t]he door to Gibson's apartment was unlocked for about a week" after he saw Gibson's body being taken away and that "[he] went inside and took an LG stereo and speakers, a Samsung 40[-inch] flat screen TV and a red bucket with a Funai DVD player and the Time Warner cable box inside of it, [and he] took these things to [his] apartment and was using them." Defendant also admitted that he "went inside with [his friend James, who] carried the stereo speakers to [defendant's] apartment. James took some sneakers and a bunch of loose change . . . and some brown work boots that he kept for himself." Defendant stated that he "didn't think there was anything wrong because [Gibson] had died and had no use for them and they were just going to waste in there . . . [and] everyone knew [Gibson] was gone and his stuff was up for grabs."
Joseph Kovarik Jr., the building landlord, testified that both Gibson and defendant were tenants in the building. Soon after Gibson died, defendant asked Kovarik to let him enter Gibson's apartment to take back the television that he sold to Gibson. Sometime later, defendant asked Kovarik to write a letter stating that defendant was given permission to enter Gibson's apartment. When Kovarik refused, defendant told Kovarik that "[he] need[s] the letter because [he] might be going to jail." Sonya Hildebrandt, an employee at a local furniture and appliance store, and John Ryan, an employee with Catholic Charities' residential program who assisted Gibson in managing his finances, provided testimony establishing that the Samsung 40-inch flat screen television and the LG stereo found in defendant's apartment were purchased by Gibson at the furniture and appliance store.
Following the close of the People's proof, Melinda Hine, a friend of defendant, testified on his behalf. She testified that she knew defendant and Gibson for at least five years and that all three would frequently meet and drink. After Gibson died, Hine observed Gibson's stereo and television in defendant's apartment. She testified that defendant told her that he "was saving them." Hine testified that after Gibson's death, the door to his apartment remained open for two weeks, which would corroborate defendant's testimony that Gibson's door was open when he entered.
Defendant testified that he entered Gibson's apartment about one week after Gibson's passing and took Gibson's property to his apartment "for safekeeping for [Gibson's] family and girlfriend because [he] didn't know if they knew [Gibson] was dead." However, on cross-examination, defendant admitted that he made no effort to contact Gibson's family. Defendant further testified that he had no intent to steal anything in Gibson's apartment since he has been receiving Social Security income since 2012 and no longer needs to steal.
Inasmuch as the jury could have credited defendant's testimony that he entered Gibson's apartment and took Gibson's property for "safekeeping" and determined on that basis that the People failed to prove that he entered the apartment with the intent to steal, a different verdict would not have been unreasonable (see People v Cruz, 152 AD3d 822, 823 [2017], lv denied 30 NY3d 1018 [2017]). However, the jury clearly credited Diles' testimony that defendant reported taking the items because Gibson "had no need" for them and, later in the same conversation, told Diles that he "knew it was wrong." The jury also appears to have found defendant's explanation of taking the property for "safekeeping" disingenuous given his false statement to Kovarik that he wanted his television back. We therefore find that, "when we view the evidence in a neutral light and defer to the jury's credibility determinations," the verdict is supported by the weight of the evidence (People v Santana, 179 AD3d 1299, 1301-1302 [2020]; see People v Kelsey, 174 AD3d 962, 964-965 [2019], lv denied 34 NY3d 982 [2019]; People v Flower, 173 AD3d 1449, 1454 [2019], lv denied 34 NY3d 931 [2019]).
Defendant also contends that County Court committed reversible error by limiting his cross-examination of Wirth, who, he argues, entered Gibson's apartment as he did, without intent to commit a crime — in Wirth's case to secure the premises — and, in defendant's case, to remove Gibson's property for safekeeping. "Although a defendant has a constitutional right to confront witnesses through cross-examination, that right is not absolute" (People v Flower, 173 AD3d at 1456 [citations omitted]; see People v Fields, 160 AD3d 1116, 1120 [2018], lv denied 31 NY3d 1116 [2018]). As we have held, "[a] trial court may impose reasonable limits on a defendant's cross-examination of a witness 'based on concerns about . . . interrogation that is repetitive or only marginally relevant'" (People v Gannon, 174 AD3d 1054, 1060 [2019], quoting People v Fields, 160 AD3d at 1120 [internal quotation marks and citation omitted]). Given that defendant's trial counsel pursued a line of questioning that sought to elicit information about the client base of Catholic Charities and Gibson's relationship with that agency, among other irrelevant matters, we find no abuse of discretion in limiting cross-examination in this regard (see People v Gannon, 174 AD3d at 1061).
We are also unpersuaded that County Court erred in denying defendant's motion to set aside the verdict (see CPL 330.30). Inasmuch as defendant's motion was predicated upon unsworn hearsay statements, County Court did not abuse its discretion in denying the motion without a hearing (see CPL 330.40 [2] [e] [ii]; People v Smith, 147 AD3d 1527, 1530 [2017], lv denied 29 NY3d 1087 [2017]; People v Blalark, 126 AD3d 1124, 1127 [2015], lv denied 27 NY3d 992 [2016]; People v Kenyon, 108 AD3d 933, 941 [2013], lv denied 21 NY3d 1075 [2013]).
We reject defendant's contention that he was not afforded meaningful representation. "To establish a claim of ineffective assistance of counsel, a defendant is required to demonstrate that he or she was not provided meaningful representation and that there is an absence of strategic or other legitimate explanations for counsel's allegedly deficient conduct" (People v Santana, 179 AD3d at 1302 [internal quotation marks and citations omitted]; accord People v Flower, 173 AD3d at 1457). "This standard is not amenable to precise demarcation and necessarily hinges upon the facts and circumstances of each particular case. A reviewing court must avoid confusing true ineffectiveness with mere losing tactics and according undue significance to retrospective analysis. In short, the Constitution guarantees a defendant a fair trial, not a perfect one" (People v Sostre, 172 AD3d 1623, 1627 [2019] [internal quotation marks and citations omitted], lv denied 34 NY3d 938 [2019]). "A defendant's criticisms of counsel must amount to more than a simple disagreement with counsel's strategies, tactics or the scope of possible cross-examination" (People v Ildefonso, 150 AD3d 1388, 1388 [2017] [internal quotation marks, brackets and citations omitted], lv denied 30 NY3d 980 [2017]).
Defendant contends that counsel should have moved to suppress or preclude his written statement or request a jury charge regarding the voluntariness of that statement based on his alleged intoxication. However, there was little likelihood that he would have prevailed on such a request. "[A] defendant's intoxication will only render a confession involuntary when the degree of inebriation has risen to the level of mania or to the level where the defendant is unable to comprehend the meaning of his or her words" (People v Dale, 115 AD3d 1002, 1003 [2014] [internal quotation marks and citations omitted]). Inasmuch as the record reflects that defendant "did not appear to be intoxicated" and "exhibited no slurred or confused speech" when talking to Diles and "was able to walk and talk without any balance issues," the record fails to support defendant's claim. Defendant's additional claims — that trial counsel failed to issue a subpoena for a witness whose testimony would be cumulative, opened the door to questioning by the People about the underlying acts of his convictions and failed to make certain objections — also lack merit, as "[t]here can be no denial of effective assistance of . . . counsel arising from counsel's failure to make a motion or argument that has little or no chance of success" (People Caban, 5 NY3d 143, 152 [2005] [internal quotation marks and citation omitted]; see People v Brown, 169 AD3d 1258, 1260 [2019], lv denied 33 NY3d 1029 [2019]). Overall, the record reflects that trial counsel presented a clear trial strategy, made decisions consistent with that strategy, effectively cross-examined witnesses and made appropriate opening and closing statements, thus providing defendant with meaningful representation (see People v Santana, 179 AD3d at 1302-1303). "[D]efendant's disagreement in hindsight with that strategy does not establish that he received less than meaningful representation" (People v Henry, 129 AD3d 1334, 1336 [2015], lv denied 26 NY3d 930 [2015]).
Finally, we reject defendant's claim that the sentence imposed was harsh and excessive. As a second violent felony offender, defendant was exposed to a determinate period of imprisonment between 7 and 15 years on the burglary conviction and was sentenced to a term of eight years, just one year above the statutory minimum. In light of the current offenses and defendant's extensive criminal history, we find no abuse of discretion or extraordinary circumstances warranting a reduction of the sentence in the interest of justice (see CPL 470.15 [3] [c]). Accordingly, the judgment of conviction is in all respects affirmed.
Garry, P.J., Egan Jr., Mulvey and Devine, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: Catholic Charities provides housing assistance to clients such as Gibson and defendant.