People v Walker (2021 NY Slip Op 01157)





People v Walker


2021 NY Slip Op 01157


Decided on February 25, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 25, 2021

109471

[*1]The People of the State of New York, Respondent,
v
Tyshawn M. Walker, Appellant.

Calendar Date: January 6, 2021

Before: Egan Jr., J.P., Aarons, Pritzker, Reynolds Fitzgerald and Colangelo, JJ.


Alexander W. Bloomstein, Hillsdale, for appellant.
P. David Soares, District Attorney, Albany (Emily Schultz of counsel), for respondent.



Colangelo, J.
Appeal from a judgment of the County Court of Albany County (Young, J.), rendered March 20, 2017, upon a verdict convicting defendant of the crime of burglary in the second degree.
In December 2015, defendant was charged by indictment with burglary in the second degree stemming from allegations that he and two others broke into an apartment building in the City of Watervliet, Albany County and stole property from a second-floor apartment. Prior to trial, defendant moved to, among other things, suppress physical evidence discovered where defendant fled from the burglarized apartment building. Following a Mapp hearing to determine the admissibility of the evidence, County Court denied defendant's motion to suppress the evidence. A jury trial ensued, during which defendant twice moved for a trial order of dismissal based upon the People's failure to identify defendant as the person who committed the crime. County Court denied both motions, and defendant was thereafter convicted as charged. Defendant's subsequent motion to set aside the verdict pursuant to CPL 330.30 based upon, among other grounds, ineffective assistance of counsel was denied. County Court sentenced defendant to a prison term of 7½ years, to be followed by five years of postrelease supervision. Defendant appeals.
Defendant argues that the jury's verdict is not supported by legally sufficient evidence and is against the weight of the evidence. As to defendant's legal sufficiency claim, defendant moved for a trial order of dismissal upon the ground that the People failed to establish his identity as the burglar and therefore preserved this claim for our review. "When considering a challenge to the legal sufficiency of the evidence, we view the evidence in the light most favorable to the People and evaluate whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crime charged" (People v Hernandez, 180 AD3d 1234, 1235 [2020] [internal quotation marks and citations omitted], lv denied 35 NY3d 993 [2020]; see People v Kalabakas, 183 AD3d 1133, 1139 [2020], lv denied 35 NY3d 1067 [2020]; People v Watkins, 180 AD3d 1222, 1223-1224 [2020], lvs denied 35 NY3d 1026, 1030 [2020]).
As relevant here, "[a] person is guilty of burglary in the second degree when he [or she] knowingly enters or remains unlawfully in a building with intent to commit a crime therein, and when . . . [t]he building is a dwelling" (Penal Law § 140.25 [2]). Police responded to a report of a burglary in progress and observed defendant and another male fleeing the apartment building, with defendant in possession of what was determined to be property stolen during the burglary and a tool used to forcibly gain unlawful entry into the apartment. While being chased by police, defendant dropped the property [*2]on the curb, ran into and attempted to hide in the backyard of a house, and was arrested moments later. Accordingly, we find that, contrary to defendant's contention, the foregoing constituted legally sufficient proof from which the jury could find that he was the individual that committed the burglary (see People v Saylor, 173 AD3d 1489, 1491-1492 [2019]; People v Stetin, 167 AD3d 1245, 1248-1249 [2018], lv denied 32 NY3d 1178 [2019]).
Defendant's legal sufficiency challenge that the proof failed to demonstrate that he entered or remained unlawfully in the apartment was "not advanced via specific objection in his motion for a trial order of dismissal and, as a consequence, [is] unpreserved for our review" (People v Thomas, 169 AD3d 1255, 1256 [2019], lvs denied 33 NY3d 1033, 1036 [2019]; see People v Baber, 182 AD3d 794, 795 [2020], lv denied 35 NY3d 1064 [2020]). Nonetheless, in reviewing defendant's challenge to the weight of the evidence, "we necessarily determine whether all of the elements of the charged crime were proven beyond a reasonable doubt" (People v Rudge, 185 AD3d 1214, 1214 [2020] [internal quotation marks, brackets and citations omitted], lv denied 35 NY3d 1070 [2020]; see People v Brinkley, 174 AD3d 1159, 1160 [2019], lv denied 34 NY3d 979 [2019]; People v Vega, 170 AD3d 1266, 1267 [2019], lv denied 33 NY3d 1074 [2019]). In conducting a weight of the evidence review, "we must view the evidence in a neutral light and determine first whether a different verdict would have been unreasonable and, if not, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Kalabakas, 183 AD3d at 1141 [internal quotation marks and citations omitted]; see People v Drayton, 183 AD3d 1008, 1009 [2020], lv denied 35 NY3d 1065 [2020]; People v Hernandez, 180 AD3d at 1235). In conducting this analysis, "[g]reat deference is accorded to the fact-finder's opportunity to view the witnesses, hear the testimony and observe demeanor" (People v Bleakley, 69 NY2d 490, 495 [1987]; see People v Cubero, 160 AD3d 1298, 1300 [2018], affd 34 NY3d 976 [2019]).
At trial, Brian Strock, a police officer for the City of Watervliet's Police Department, testified that, while on patrol on December 29, 2015, he responded to a call of a burglary in progress at a two-story residence located on the corner of 24th Street and 10th Avenue. He testified that, as he was walking to the house within minutes of receiving the call, the front door "comes flying open, and . . . two males come flying out of the door of that house." Daniel Mahar, another police officer, and Walter Ellis, a police sergeant, had also responded to the call and were positioned directly in front of the house. One of the males was "holding a bunch of property in his arms." According to Strock, defendant "actually dropped the stuff [*3]right at the curb line in the street" and continued to run towards Mahar but eluded Mahar's grasp. Strock testified that he and Mahar gave chase and, when the two males split ways, he followed Mahar as Mahar chased defendant into an enclosed backyard of a nearby house. Strock testified that, when he arrived in the yard, he saw defendant, who "was hiding," "tucked down, crouched in the back left corner of the yard." Strock testified that defendant was "breathing heavily," "sweating" and "very nervous." After defendant was taken into custody, Strock and Mahar returned to the residence and observed that "[t]he apartment was completely ransacked," and the door to the apartment had been forced open. Strock testified that the items recovered from the curb included the victim's personal property, which she identified at trial, and a crowbar. Rubber gloves were also recovered, one from within the home and the other within the threshold of the home. Strock admitted that he did not see defendant's face until after he was apprehended, and he acknowledged that neither he nor the other officers found any object in defendant's possession that confirmed defendant's presence in the burglarized apartment.
Jonathan Williams, a neighbor who lived downstairs from the burglarized apartment, testified that he heard the doorbell ring about five times and then twice more, and, when he peeked through the blinds, he saw three men that he did not recognize on the stoop outside of the main front door. Soon thereafter, the doorbell rang a few more times, and he heard the front door crash open, followed by the sound of footsteps running up the stairs. Then Williams heard the door to the burglarized apartment crash open, followed by the sound of footsteps traversing the upstairs apartment. Thereafter, Williams observed that the door frame to the burglarized apartment was split apart and that the door was kicked in. He testified that he called the resident of the upstairs apartment and then called 911. Williams testified that he then heard two people coming down the steps and also heard the front door bang open and bang open again a couple of seconds later.
Mahar testified, as relevant here, that from the time that he started chasing defendant, he only lost sight of him for "15 to maybe 20 seconds max" when defendant turned into a narrow path leading to the fenced-in backyard. During that brief period, defendant was already in the backyard and was unable to get away. Mahar testified that he identified defendant as one of the males who exited the residence as he chased him down the street. Defendant "had the smaller stature" and was "wearing
. . . dark clothing." According to Mahar, defendant matched the description of the person that he observed running in front of him.
The victim's testimony established that the burglarized premises was a dwelling and that she did not give permission for anyone, including defendant, to enter or remain in her apartment. She [*4]identified photographs that depicted the ransacked condition of her apartment after the burglary and that also depicted the items of personal property that were stolen from her apartment and subsequently recovered from the curb. A different verdict would not have been unreasonable inasmuch as there was no DNA evidence or property recovered from defendant upon his arrest that implicated him in the crime, and the officers did not a get a good look at defendant's face until after he was apprehended (see People v Cruz, 152 AD3d 822, 823 [2017], lv denied 30 NY3d 1018 [2017]). However, the jury credited the testimony of Strock and Mahar that, along with the evidence of stolen property found at the scene, it was defendant who they chased from the scene of the crime up until his arrest. According great deference to that credibility determination, and viewing the evidence in a neutral light, we find that the verdict is supported by the weight of the evidence (see People v Saylor, 173 AD3d at 1492; People v Austin, 115 AD3d 1063, 1064-1065 [2014], lv denied 23 NY3d 960 [2014]; People v Alsaifullah, 96 AD3d 1103, 1104 [2012], lv denied 19 NY3d 994 [2012]; People v Demosthene, 225 AD2d 488, 489 [1996], lv denied 88 NY2d 935 [1996]).
Defendant next argues that County Court erred in denying his motion to suppress the evidence seized from the vicinity of the crime on the grounds that there was no legal basis for his arrest and no search warrant. We disagree. The suppression hearing testimony established that defendant exited the burglarized apartment with property in his arms and dropped the property on the curb as he was fleeing the scene. By "voluntarily relinquish[ing] possession in a calculated decision in response to police conduct," defendant abandoned the property (People v Oliver, 39 AD3d 880, 880 [2007] [internal quotation marks and citation omitted], lv dismissed 9 NY3d 868 [2007]) and, therefore, he had no legitimate expectation of privacy in the area where the property was recovered that would afford him standing to contest the search and seizure of the property from that area (see People v Williams, 182 AD3d 776, 778 [2020], lvs denied 35 NY3d 1070, 1071 [2020]).
We reject defendant's contention that he was not afforded meaningful representation. "To establish a claim of ineffective assistance of counsel, a defendant is required to demonstrate that he or she was not provided meaningful representation and that there is an absence of strategic or other legitimate explanations for counsel's allegedly deficient conduct" (People v Santana, 179 AD3d 1299, 1302 [2020] [internal quotation marks and citations omitted], lv denied 35 NY3d 973 [2020]; see People v Flower, 173 AD3d 1449, 1457 [2019], lv denied 34 NY3d 931 [2019]). "This standard is not amenable to precise demarcation and necessarily hinges upon the facts and circumstances of each particular case. A reviewing court must avoid confusing true ineffectiveness with mere losing tactics and [*5]according undue significance to retrospective analysis. In short, the Constitution guarantees a defendant a fair trial, not a perfect one" (People v Porter, 184 AD3d 1014, 1019 [2020] [internal quotation marks and citations omitted], lv denied 35 NY3d 1069 [2020]). Defendant contends that counsel was ineffective for, among other things, failing to request DNA testing of the evidentiary items recovered from the scene of the crime. Where, as here, the defense was based upon a lack of identification evidence, the failure to request DNA testing could have been a tactical decision to call into question and create doubt on defendant's identity as the burglar. Accordingly, defendant cannot demonstrate that "there is an absence of strategic or other legitimate explanations for counsel's allegedly deficient conduct" in this regard (People v Santana, 179 AD3d at 1302 [internal quotation marks and citations omitted]; People v Valentin, 173 AD3d 1436, 1440 [2019], lv denied 34 NY3d 954 [2019]).
We also find no merit to defendant's contention that counsel was ineffective during jury selection by, among other things, failing to request that certain jurors be removed for cause. "Jury selection involves the quintessentially tactical decision of whether a defendant's interests would be assisted or harmed by a particular juror, which this Court will not typically second-guess" (People v Santiago, 185 AD3d 1151, 1155 [2020] [internal quotation marks, brackets and citations omitted], lv denied 35 NY3d 1097 [2020]). The record evidence establishes that the jurors unequivocally demonstrated their commitment to be fair and impartial and to follow County Court's instructions as to, among other things, the People's burden of proof and assessment of witness credibility (see People v Santiago, 185 AD3d at 1155-1156; People v Horton, 181 AD3d 986, 997-998 [2020], lv denied 35 NY3d 1045 [2020]). In view of the foregoing, and given that the record demonstrates that trial counsel engaged in a thorough cross-examination of the People's witnesses, made appropriate objections, mounted a vigorous defense and made compelling opening and closing arguments, we find that defendant received meaningful representation (see People v Porter, 184 AD3d at 1018-1019; People v Santana, 179 AD3d at 1302-1303; People v Stetin, 167 AD3d at 1250-1251).
Defendant also contends that the sentence imposed was harsh and excessive. "It is well settled that a sentence that falls within the permissible statutory ranges will not be disturbed unless it can be shown that the sentencing court abused its discretion or that extraordinary circumstances exist warranting a modification in the interest of justice" (People v Hightower, 186 AD3d 926, 932 [2020] [internal quotation marks and citations omitted], lv denied 35 NY3d 1113 [2020]; see People v Gilmore, 177 AD3d 1029, 1029 [2019], lvs denied 35 NY3d 970 [2020]). Given the circumstances of the crime involving, among other things, the theft of "unwrapped [*6]Christmas presents" from the victim's apartment, as well as the fact that the sentence imposed fell within the middle of the sentencing range and was significantly less than the maximum term allowed (see Penal Law § 70.02 [1] [b]; [3] [b]; People v Gilmore, 177 AD3d at 1029-1030), we discern no extraordinary circumstances or abuse of discretion that would warrant a modification of the sentence (see People v Porter, 184 AD3d at 1020).
Egan Jr., J.P., Aarons, Pritzker and Reynolds Fitzgerald, JJ., concur.
ORDERED that the judgment is affirmed.