People v Logan (2021 NY Slip Op 05893)





People v Logan


2021 NY Slip Op 05893


Decided on October 28, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:October 28, 2021

110202
[*1]The People of the State of New York, Respondent,
v
Anthony Logan, Appellant.

Calendar Date:September 9, 2021

Before:Lynch, J.P., Aarons, Pritzker, Reynolds Fitzgerald and Colangelo, JJ.

Mark Diamond, Albany, for appellant.
Robert M. Carney, District Attorney, Schenectady (Peter H. Willis of counsel), for respondent.



Colangelo, J.
Appeal from a judgment of the Supreme Court (Coccoma, J.), rendered July 23, 2018 in Schenectady County, upon a verdict convicting defendant of the crimes of criminal possession of a weapon in the second degree, reckless endangerment in the second degree, menacing in the second degree, criminal contempt in the second degree, tampering with a witness in the fourth degree and criminal solicitation in the fourth degree.
In June 2017, police responded to a domestic disturbance call placed by the victim's father, who reported that defendant, the victim's husband, was choking the victim inside of their residence at 535 Mumford Street in the City of Schenectady, Schenectady County. The first officers responding to the scene were unable to make contact with the victim or other residents of the building. Another officer arrived at the scene and he positioned himself in the alley at the rear of the apartment building with his K-9 partner. This officer observed defendant lean his body out of a second-floor window of 535 Mumford Street and throw a black backpack into the window of 533 Mumford Street, the neighboring building. Defendant thereafter emerged onto the second-floor porch of 535 Mumford Street and, while officers were engaging with him, defendant stated several times that he had a gun. When he raised a gray colored object towards the officers, he was shot twice. Defendant was transported to the hospital. In the meantime, the backpack was recovered by an officer from inside 533 Mumford Street, and a search of it found a rifle with a sawed-off barrel and a smaller, closed bag that contained ammunition.
The following day, Peter Forth, a detective with the City of Schenectady Police Department went to the hospital with the intention of interviewing defendant but found defendant to be disoriented and declined to question him. Forth returned to the hospital the next day and, after reading defendant his Miranda rights, he questioned defendant about the incident. Prior to Mirandizing defendant, Forth obtained pedigree information from him, and defendant told Forth that he was on parole for a "weapons possession" conviction and he told Forth the name of his parole officer. At this time, defendant admitted to throwing a bag containing a half pound of marihuana out of the window but denied knowing that a gun was inside of the bag and denied having a gun.
Defendant was thereafter charged by indictment with criminal possession of a weapon in the second degree (two counts), reckless endangerment in the second degree, menacing in the second degree (two counts), unlawful imprisonment in the second degree, criminal obstruction of breathing, criminal contempt in the second degree, tampering with a witness in the fourth degree and criminal solicitation in the fourth degree (two counts). Defendant moved to suppress the evidence seized from the backpack and requested a Mapp hearing to determine the admissibility thereof. Defendant filed an amended motion [*2]seeking to suppress his statements made at the hospital. A combined Mapp/Huntley hearing was conducted, after which County Court (Teresi, J.H.O.) denied defendant's motion. Following a jury trial, defendant was convicted of criminal possession of a weapon in the second degree, reckless endangerment in the second degree, two counts of menacing in the second degree, criminal contempt in the second degree, tampering with a witness in the fourth degree and criminal solicitation in the fourth degree. Defendant was thereafter sentenced to a prison term of 10 years, followed by five years of postrelease supervision, for his conviction of criminal possession of a weapon in the second degree and to lesser concurrent terms on the remaining convictions. Defendant appeals.
Defendant initially contends that his conviction for criminal possession of a weapon in the second degree should be reversed because he was neither charged with nor proven to have knowledge that he had a prior criminal conviction at the time that he possessed the gun. This argument amounts to a challenge to the legal sufficiency of the evidence as defendant maintains, in essence, that a necessary element of this crime is his knowledge that he had a prior criminal conviction at the time of the offense. Although defendant orally moved, at the close of the People's case, to dismiss the charge of criminal possession of a weapon in the second degree based on the ground that there was no proof that he knowingly and voluntarily possessed a loaded gun, he did not move to dismiss said charge on the ground that he lacked knowledge of his prior criminal conviction. As defendant's legal sufficiency challenge "was not advanced via specific objection in his motion for a trial order of dismissal . . .[, it] is unpreserved for our review" (People v Walker, 191 AD3d 1154, 1156 [2021] [internal quotation marks, brackets and citation omitted], lv denied 37 NY3d 961 [2021]; see People v Kabia, 190 AD3d 1105, 1106 [2021]). In any event, criminal possession of a weapon "requires only that defendant's possession be knowing" (People v Ford, 66 NY2d 428, 440 [1985] [internal citations omitted]). In this respect, a "defendant's previous conviction [is] not an element of the offense charged
. . . and so [does] not have to be alleged at all" (People v Jones, 22 NY3d 53, 59 [2013] [internal quotation marks and citation omitted]). Therefore, knowledge by defendant of his prior criminal conviction is not a necessary element of criminal possession of a weapon in the second degree.
Defendant next contends that County Court (Teresi, J.H.O.) erred in denying suppression of the gun on the ground that he lives in both buildings and therefore had an expectation of privacy in the property from where the gun was recovered. He contends that he was a beneficial owner and frequent occupant of the property and that the People did not demonstrate exigent circumstances justifying the warrantless search thereof. "A defendant [*3]seeking suppression of evidence has the burden of establishing standing by demonstrating a legitimate expectation of privacy in the premises or object searched" (People v Ramirez-Portoreal, 88 NY2d 99, 108 [1996] [citations omitted]).
The evidence demonstrated that defendant had relinquished his ownership interest in 533 Mumford Street to his uncle prior to the incident, and the record belies any claim by defendant that he established residency or lived with any consistency at 533 Mumford Street at the time of the incident. Jonathan Haigh, a police officer with the City of Schenectady Police Department, testified that the property was "unsecured," "[t]he doors were [physically] open," "it was not clean," as he observed "[c]obwebs and dust," and he "didn't see any furniture." He therefore opined that "[i]t just didn't appear that anybody had been living there." Based upon the foregoing, County Court properly found that defendant had no legitimate expectation of privacy in the property. Further, we agree with County Court's determination that defendant's actions constituted abandonment of the backpack and its contents. The suppression hearing testimony established that defendant, prior to throwing the backpack across the alley into 533 Mumford Street, repeatedly looked to make sure that the alley was clear from the officers' view. "Having discarded the [backpack] . . ., defendant abandoned any right to challenge the seizure of this evidence" (People v Butler, 196 AD3d 28, 32 [2021]; see People v Walker, 191 AD3d at 1158). We therefore find that County Court properly denied defendant's motion to suppress the gun.[FN1]
Defendant also contends that his statement to Forth at the hospital should have been suppressed on the basis that the People failed to produce sufficient evidence that he had the capacity to understand his Miranda rights or the capacity to understand the ramifications of waiving them. "The People bear the burden of proving the voluntariness of the defendant's statements beyond a reasonable doubt, including that any custodial interrogation was preceded by the administration and defendant's knowing waiver of his or her Miranda rights. Determining whether a statement is voluntary is a factual issue governed by the totality of the circumstances and the credibility assessments of the suppression court in making that determination are entitled to deference" (People v Davis, 196 AD3d 918, 919 [2021] [internal quotation marks, brackets and citations omitted]; see People v Rudolph, 170 AD3d 1258, 1259 [2019], lv denied 34 NY3d 937 [2019]). Forth testified at the suppression hearing that, on the date of the hospital interview, defendant was "a lot more alert" and was able to maintain "regular conversation" and made no complaints of pain. He further testified that defendant was read his Miranda rights, indicated that he understood his rights, and initialed and signed a document setting forth those rights. Forth's testimony established, [*4]beyond a reasonable doubt, that defendant "showed no signs that his physical or mental condition was impaired to the extent that his ability to make a decision whether to speak with the officers was undermined" (People v Robinson, 156 AD3d 1123, 1131 [2017], lv denied 30 NY3d 1119 [2018]; see People v Balram, 47 AD3d 1014, 1015 [2008], lv denied 10 NY3d 859 [2008]). According due deference to the determination of the suppression court and given the totality of the circumstances, we find that defendant's motion to suppress his statements was properly denied. Defendant's suggestion that the People had the obligation to produce his medical records is of no moment since defendant had the ability to obtain them and seek to introduce them if he so chose.
Contrary to defendant's contention, Supreme Court properly admitted a recording of a telephone call placed by defendant from jail using his personal identification number (hereinafter PIN). "'The predicate for admission of tape recordings in evidence is clear and convincing proof that the tapes are genuine and that they have not been altered'" (Grucci v Grucci, 20 NY3d 893, 897 [2012], quoting People v Ely, 68 NY2d 520, 522 [1986]). It has been held that "use of [PINs] that are required to place a phone call [from jail] are sufficient indicia of reliability" (People v Sostre, 172 AD3d 1623, 1625 [2019], lv denied 34 NY3d 938 [2019]). According to the testimony of an investigator with the District Attorney's office, the call was placed through defendant's PIN and, at the outset of the call, defendant stated his name. The investigator further testified that a recording of this nature is unalterable but may be downloaded onto a compact disc, as was done in this case. Moreover, "'[a]s a number of courts have explained, where detainees are aware that their phone calls are being monitored and recorded, all reasonable expectation of privacy in the content of those phone calls is lost, and there is no legitimate reason to think that the recordings, like any other evidence lawfully discovered, would not be admissible'" (People v Brown, 195 AD3d 1163, 1165 [2021], quoting People v Diaz, 33 NY3d 92, 99-100 [2019], cert denied ___ US ___, 140 S Ct 394 [2019]). In introducing the recording, the People called Daniel Gangaram, an officer with the Schenectady County Sheriff's Office, who testified that the phone system installed at the jail where defendant was being held prior to trial "warns the user that the call may be monitored by law enforcement and the District Attorney's office." Further, the recording itself states at the outset of the call that "all calls will be monitored or recorded and may be accessed by law enforcement agencies including the District Attorney's office." Accordingly, all reasonable expectation of privacy in the content of the phone call was lost and the recording was properly admitted into evidence.
Finally, defendant contends that Supreme Court erred in admitting into evidence [*5]police dashcam video recordings that contained allegedly indecipherable audio that encouraged the jury to speculate as to what witnesses were saying. Such recordings were admitted under the present sense impression exception to the hearsay rule, which defendant does not appear to challenge. Rather, his challenge is based on the alleged inaudibility of the recordings. Defendant further claims that the admission of the recordings constitutes improper bolstering of the officers' trial testimony. "'Trial courts are accorded wide discretion in making evidentiary rulings and, absent an abuse of discretion, those rulings should not be disturbed on appeal'" (People v Gaylord, 194 AD3d 1189, 1191 [2021], lv denied 37 NY3d 972 [2021], quoting People v Carroll, 95 NY2d 375, 385 [2000]). According deference to the court's determination that the recordings were sufficiently audible, we find the admission of the recordings to be proper. Defendant's challenge to the admissibility of the recordings on the ground that they improperly bolstered the witnesses' testimony is unpreserved for our review as no objection to the introduction of the recordings was made on that basis (see People v Forney, 183 AD3d 1113, 1115-1116 [2020], lv denied 35 NY3d 1065 [2020]).
Lynch, J.P., Aarons, Pritzker and Reynolds Fitzgerald, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: Although County Court also held that exigent circumstances justified the search and seizure of the backpack and its contents, that basis need not be addressed in light of our determination that defendant had no expectation of privacy and, alternatively, abandoned the property.