People v Casalino (2022 NY Slip Op 02310)

People v Casalino

2022 NY Slip Op 02310

Decided on April 7, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:April 7, 2022

110287
[*1]The People of the State of New York, Respondent,
v
Christopher Casalino, Appellant.

Calendar Date:February 9, 2022

Before:Lynch, J.P., Clark, Aarons, Colangelo and Fisher, JJ.

Craig S. Leeds, Albany, for appellant.
J. Anthony Jordan, District Attorney, Fort Edward (Taylor Fitzsimmons of counsel), for respondent.

Colangelo, J.
Appeal from a judgment of the County Court of Washington County (McKeighan, J.), rendered January 5, 2018, upon a verdict convicting defendant of the crimes of sexual abuse in the first degree (two counts) and endangering the welfare of a child.
In January 2017, defendant was charged by indictment with two counts of sexual abuse in the first degree and one count of endangering the welfare of a child, stemming from allegations that he engaged in sexual abuse with a minor child (hereinafter the victim). During the first day of jury selection at the ensuing trial, the People disclosed that, pursuant to a search warrant, the contents of defendant's and the victim's cell phones had been obtained but had not been disclosed to defendant. The People then provided a DVD with the contents of both phones to defendant and to County Court. Defendant moved for a mistrial based upon the People's alleged Brady and Rosario violations and, upon the People's consent, County Court declared a mistrial without prejudice. Following a second jury trial, defendant was convicted as charged and thereafter sentenced to concurrent prison terms of seven years, to be followed by 10 years of postrelease supervision, on the sexual abuse convictions and to a lesser concurrent term on the remaining conviction. Defendant appeals.
Defendant contends that his retrial was barred by the prohibitions against double jeopardy set forth in US Constitution, 5th Amendment and NY Constitution, article I, § 6. The People concede that disclosure of the content of the cell phones was late pursuant to CPL 240.20 (1) (a). "[I]f the defendant requests or consents to a mistrial, double jeopardy will not preclude a retrial, unless the defendant can demonstrate prosecutorial or judicial misconduct intended to provoke a mistrial" (People v Ellis, 182 AD3d 791, 792 [2020] [citations omitted], lv denied 35 NY3d 1026 [2020]; see People v Haffa, 197 AD3d 964, 965 [2021], lv denied 37 NY3d 1059 [2021]). Defendant does not allege that the People intended to provoke a mistrial, but argues that his request for a mistrial was attributable to the People based upon their untimely disclosure of the cell phone records. County Court expressly stated that it was "not finding wrongdoing" by either party. Accordingly, jeopardy did not attach to bar retrial of the indictment (see People v Ellis, 182 AD3d at 792).
Defendant next contends that the verdict was not supported by legally sufficient evidence and was against the weight of the evidence. Defendant's legal sufficiency challenge is unpreserved for our review as the record reflects that his trial order of dismissal did not include arguments directed at any specific error in the proof (see People v Hawkins, 11 NY3d 484, 492 [2008]; People v Logan, 198 AD3d 1181, 1182-1183 [2021], lv denied 37 NY3d 1162 [2022]). "Nevertheless, as part of our weight of the evidence review, we necessarily determine whether the People proved each element of the charged [*2]crime beyond a reasonable doubt" (People v Walker, 190 AD3d 1102, 1103 [2021] [internal quotation marks and citations omitted], lvs denied 37 NY3d 958, 961 [2021]; see People v Serrano, 200 AD3d 1340, 1341-1342 [2021]; People v Barzee, 190 AD3d 1016, 1017 [2021], lv denied 36 NY3d 1094 [2021]). "In a weight of the evidence analysis, we view the evidence in a neutral light and determine whether a different verdict would have been unreasonable; if a different verdict would not have been unreasonable, we weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Ferguson, 193 AD3d 1253, 1254 [2021] [citations omitted], lv denied 37 NY3d 964 [2021]; see People v Danielson, 9 NY3d 342, 348 [2007]; People v Bleakley, 69 NY2d 490, 495 [1987]). In conducting this analysis, "[g]reat deference is accorded to the fact-finder's opportunity to view the witnesses, hear the testimony and observe demeanor" (People v Bleakley, 69 NY2d at 495; see People v Conway, 179 AD3d 1218, 1218 [2020], lv denied 35 NY3d 941 [2020]; People v Cubero, 160 AD3d 1298, 1300 [2018], affd 34 NY3d 976 [2019]).
For defendant to be convicted of sexual abuse in the first degree, the People were required to prove that defendant, being 21 years old or older, subjected another person, who was less than 13 years old, to sexual contact (see Penal Law § 130.65 [4]). For defendant to be convicted of endangering the welfare of a child, the People were required to prove that defendant "knowingly act[ed] in a manner likely to be injurious to the physical, mental or moral welfare of a child less than [17] years old or direct[ed] or authoriz[ed] such child to engage in an occupation involving a substantial risk of danger to his or her life or health" (Penal Law § 260.10 [1]).
The victim testified that, during the week of October 17 to 23, 2016, defendant came into her bed for about an hour or two each night. During this time, defendant touched her "[u]nderneath [her] [night]clothes, [her] private areas . . . between [her] legs and [her] chest." The touching started after he got into her bed and continued until he left. From October 24 through 30, 2016, defendant came into her bed nightly and started taking off her clothes and touching her again with his hand between her legs and on her chest. The record established that, at the time of the crimes charged in the indictment, defendant was 33 years old and the victim was 12. The victim further testified that she texted defendant from her cell phone when she was unsure if she was pregnant, and defendant responded that he would buy a pregnancy test.
Frank Hunt Jr., an investigator with the Whitehall Police Department, testified that the police received calls from two of the victim's family members alleging that defendant "had touched [the victim] [and] sexually molested [*3]her." Hunt and a Child Protective Services caseworker then interviewed the victim, who disclosed these allegations to them. When defendant was brought to the police station, Hunt read defendant his Miranda rights word by word from the standardized Miranda form on the station's computer. Defendant indicated that he understood the rights and agreed to speak to Hunt. A recording of this interview was admitted into evidence. Defendant then gave and signed a written statement. In the statement, defendant admitted, among other things, that when his wife went to work, he would lie in bed with the victim and they would "talk and play." Defendant corroborated the victim's account that she was wearing pajamas and he was wearing shorts and a shirt. When asked if he "touch[ed] the victim's vagina with [his] hand," defendant responded, "I have no clue but to me it was in a non-sexual way." Defendant told Hunt that he was a disabled veteran, having suffered extensive injuries, that he takes antidepression medication, and that he suffers from amnesia and gets delusional. Hunt testified that they took bedding from the victim's bed, which was not subject to forensic analysis, and recovered defendant's cell phone.
Defendant's wife testified that, during the last two weeks in October 2016, defendant and the victim were "physically touching each other generally just a lot." She worked evenings and put the kids to bed at 8:30 p.m. before she left for work. She testified that, during the children's bedtime routine, defendant was lying "in [the victim's] bed, beside her, on the inside of the bed." On a day off, she checked the victim's cell phone and noticed that the victim's records were deleted every night. She then checked defendant's cell phone and found disturbing text messages between the victim and defendant. She took screenshots of the text messages on defendant's cell phone and these screenshots were placed into evidence at trial. Defendant's messages included, among others, "[D]id you want me to come up tonight? Sorry." "I did not know if you ever wanted to take a break" from "[d]oing what we do." Defendant's wife also took pictures of the victim and defendant lying on the couch one day, which she felt was unnatural. According to defendant's wife, this behavior went on all day, "they were all over each other. Just her arms around his neck, [and] his arms around her waist. Him grabbing at her throat, her grabbing at his beard, and kind of laughing." She testified that she took a video clip within a few minutes of taking the pictures, which was also admitted into evidence. An investigator with the State Police conducted an examination of defendant's cell phone and made a DVD of the cell phone extraction. The DVD was introduced into evidence at trial.
On this record, an acquittal on all counts would not have been unreasonable if the jury had resolved the credibility issues differently. According great deference to the jury's credibility [*4]determinations and viewing the evidence in a neutral light, and considering the inferences that may properly be drawn from, among other things, the cell phone messages and the observations of defendant's wife, we are satisfied that the convictions are supported by the weight of the evidence (see People v File, 201 AD3d 1036, 1038 [2022]; People v Walker, 191 AD3d 1154, 1158 [2021], lv denied 37 NY3d 961 [2021]).
Defendant argues that he was deprived of a fair trial because of prosecutorial misconduct during summation. As the record reflects that defendant made no objections to any of the prosecutor's alleged improper statements, his assertion of prosecutorial misconduct is unpreserved (see People v Lyons, 200 AD3d 1222 [2021], lv denied 37 NY3d 1162 [2022]). In any event, defendant's claims are without merit. Defendant also contends that County Court's statement to the jury regarding the order of summations improperly shifted the burden of proof to defendant and also that the court improperly charged the jury. However, as defendant failed to object to the court's statement or charge, his claims in this regard are also unpreserved (see People v Dorsey, 151 AD3d 1391, 1395 [2017], lv denied 30 NY3d 949 [2017]). In any event, the challenged statement did not impermissibly shift the burden of proof.
Defendant further argues that counsel's failure to object to County Court's statements and the prosecutor's summation constituted the ineffective assistance of counsel. "To establish a claim of ineffective assistance of counsel, a defendant is required to demonstrate that he or she was not provided with meaningful representation and that there is an absence of strategic or other legitimate explanations for counsel's allegedly deficient conduct" (People v Santana, 179 AD3d 1299, 1302 [2020] [internal quotation marks and citations omitted], lv denied 35 NY3d 973 [2020]; see People v Flower, 173 AD3d 1449, 1457 [2019], lv denied 34 NY3d 931 [2019]). Further, "trial counsel cannot be ineffective for failing to advance an argument that has little or no chance of success" (People v Maisonette, 192 AD3d 1325, 1330 [2021], lv denied 37 NY3d 966 [2021] [internal quotation marks, brackets and citation omitted]; see People v Lyons, 200 AD3d at 1226). As noted, were defendant's claims properly before us, we would have found them to lack merit, so counsel was not ineffective for failing to make any objections in that regard. The record also demonstrates that defense counsel engaged in thorough cross-examination of the People's witnesses, made appropriate objections, and made compelling opening and closing arguments. "Viewing the record in its entirety, defendant received meaningful representation" (People v Lyons, 200 AD3d at 1226; see People v Caban, 5 NY3d 143, 152 [2005]; People v Porter, 184 AD3d 1014, 1018-1020 [2020], lv denied 35 NY3d 1069 [2020]).
Finally, we reject defendant's contention that the sentence imposed was harsh and excessive. "It is [*5]well settled that a sentence that falls within the permissible statutory ranges will not be disturbed unless it can be shown that the sentencing court abused its discretion or that extraordinary circumstances exist warranting a modification in the interest of justice" (People v Barzee, 190 AD3d at 1021 [2021] [internal quotation marks and citations omitted]; see People v Hightower, 186 AD3d 926, 932 [2020], lv denied 35 NY3d 1113 [2020]). The record reveals that, prior to trial, defendant was offered a plea bargain whereby he would plead to count 1 of the indictment and be sentenced to a prison term of 2½ years to be followed by 10 years of postrelease supervision. As County Court noted at sentencing, the minimum prison term was offered in order to spare the victim from having to testify at trial. Although the sentence imposed was the maximum permissible prison term on the sexual abuse convictions, we note that the court chose to have the sentences run concurrently, rather than consecutively, which was permissible under the circumstances. In addition, the court took notice of mitigating factors such as defendant's military service and mental health issues. However, given the compelling victim impact statement read at sentencing, the seriousness of the offenses and defendant's refusal to take responsibility for his actions, we discern no extraordinary circumstances or an abuse of discretion that would warrant a modification of the prison sentence (see People v Dawson, 195 AD3d 1157, 1163 [2021], lv denied 37 NY3d 1095 [2021]; People v Infinger, 194 AD3d 1183, 1188 [2021], lv denied 37 NY3d 965 [2021]).
Lynch, J.P., Clark, Aarons and Fisher, JJ., concur.
ORDERED that the judgment is affirmed.